OPINION
{¶ 1} Appellant, Alan R. Glavic, Jr., appeals the September 6, 2001 judgment entry of the Lake County Court of Common Pleas, in which he was found guilty of twenty-four offenses and sentenced.
 {¶ 2} On May 11, 2001, appellant was indicted with the following: one count of engaging in a pattern of corrupt activity, a felony of the first degree, in violation of R.C. 2923.32(A)(1) with a forfeiture specification pursuant to R.C. 2923.32(B)(3); eleven counts of breaking and entering, felonies of the fifth degree, in violation of R.C.2911.13(A); two counts of theft, felonies of the fifth degree, in violation of R.C. 2913.02(A)(1); two counts of tampering with evidence, felonies of the third degree, in violation of R.C. 2921.12(A)(1); four counts of grand theft, felonies of the fourth degree, in violation of R.C. 2913.02(A)(1); one count of misuse of credit cards, a felony of the fifth degree, in violation of R.C. 2913.21(B)(2); one count of forgery, a felony of the fifth degree, in violation of R.C. 2913.31(A)(1); one count of receiving stolen property, a felony of the fifth degree, in violation of R.C. 2913.51(A); one count of grand theft of a motor vehicle, a felony of the fourth degree, in violation of R.C. 2913.02(A)(1); three counts of vandalism, felonies of the fifth degree, in violation of R.C.2909.05(B)(1)(a); three counts of disrupting public services, felonies of the fourth degree, in violation of R.C. 2909.04(A)(1); and one count of possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A).
 {¶ 3} At the arraignment on May 17, 2001, appellant entered a plea of not guilty to the charges. The case proceeded to a jury trial on July 24, 2001. Upon motion of the state, two of the breaking and entering charges and the vandalism charge were dismissed. Appellant was found guilty by the jury on all of the remaining counts except one count of tampering with evidence, two counts of breaking and entering, one count of grand theft, and the forfeiture specification that accompanied the engaging in a pattern of corrupt activity charge.
 {¶ 4} The following facts are pertinent to this appeal. From late December 2000 through March 2001, appellant engaged in a string of breaking and entering along with other criminal conduct in Lake County and other surrounding counties. The testimony revealed that large quantities of cigarettes, cigarette rolling papers, audio equipment, and pornographic magazines were stolen from area stores. Other stolen items included cash and, in one situation, a credit card. Evidence was also presented that appellant used the credit card to purchase additional audio equipment and pay for repairs to his automobile. The testimony further revealed that at some of the stores, telephone wires were cut outside and that rocks or bricks were thrown through glass windows or doors to gain entry into the stores. Appellant admitted some involvement to the police, but he claimed that he did not participate in a criminal business enterprise.
 {¶ 5} Detective Barry Witt ("Detective Witt") of the city of Willowick Police Department testified that he investigated break-ins at a couple stores in Willowick. He obtained information from a confidential informant that Shawn Dercole ("Dercole") had "hundreds of cartons of name brand cigarettes for sale." A search warrant was executed for Dercole's apartment and several items were seized, which included pieces of paper with different phone numbers and addresses, a price list of cigarettes and the number of cigarettes sold by Dercole, numerous packages of cigarette rolling paper, several pornographic magazines, and cartons of cigarettes.
 {¶ 6} Peggy Robinson ("Robinson") took the stand and related that she lived in Dercole's apartment building and that Dercole approached her about whether she was a smoker. When she informed him that she was a smoker, he inquired as to what brand she smoked. Robinson told him that she smoked Newport 100's, so Dercole asked her if she was interested in purchasing a carton of Newport cigarettes for $15. Robinson declined the offer.
 {¶ 7} During the trial, Dercole related that he and appellant were friends and that he felt bad about testifying against appellant.[1]
Dercole confirmed that he was not a smoker. He further revealed that appellant visited his apartment numerous times in early January 2001, and brought a number of cigarette cartons, pornographic materials, and rolling papers with him. According to Dercole, appellant told him that he had a buyer for the cigarettes, but the buyer backed out, so Dercole volunteered to sell them. As a result, Dercole was to retain a portion of the proceeds from any sale that occurred and the remainder of the money was to be given to appellant.
 {¶ 8} There was also testimony from Sergeant Anthony Iliano ("Sergeant Iliano") of the Lake County Sheriff's Department that he had still photographs printed from the VCR surveillance tape of the Speedway in Perry Township. The camera was positioned showing a view of the front door. The photos were enlarged and showed an individual breaking the window with a shovel. Sergeant Iliano opined that after viewing the photos, the individual contained in them was appellant. Furthermore, Sergeant Iliano testified that the shoe prints at the crime scenes matched a pair of shoes that was obtained from appellant's apartment.
 {¶ 9} Joseph Walters ("Walters"), a fellow inmate of appellant's at the Lake County Jail, testified that he had known appellant for six years. He stated that while he and appellant were in jail, appellant had told him about "some merchandise that was from a business that he needed to get rid of and [appellant asked Walters] where to get rid of some items." Specifically, the merchandise consisted of stereo equipment and cigarettes. Appellant explained to Walters the manner in which he had acquired the items. Specifically, appellant told Walters that he "cut the phone lines and broke the back door in." According to Walters, appellant also revealed that "he threw stuff into the place to make sure the alarm didn't trip, and that they loaded stuff into a van."
 {¶ 10} Walters mentioned that appellant told him about an individual by the name of Lance Watson ("Watson"). Walters' testimony revealed that Watson helped appellant make bail by selling some sound equipment and cigarettes. Appellant informed Walters that Watson "was his partner and they [had] been doing numerous jobs around the area." Appellant told Walters that he and Watson attempted to get into a safe at a gas station, but they were unsuccessful. According to Watson, appellant indicated that some of the merchandise from the break-ins was located at his Eastlake residence.
 {¶ 11} At the close of the state's case-in-chief, appellant moved for a Crim.R. 29 acquittal, which was overruled. Appellant then presented the testimony of his father. At the close of appellant's case, the motion was renewed and again overruled.
 {¶ 12} A sentencing hearing was held on August 30, 2001. In a judgment entry dated September 6, 2001, appellant was sentenced to a total prison term of fifteen years, which included nine years in prison for engaging in a pattern of corrupt activity. This was to be served consecutively to all the other prison terms in the case, the majority of the terms were eleven month sentences. Appellant was also ordered to pay court costs. Appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 13} "[1.] Appellant's [c]onviction for [e]ngaging in a [p]attern of [c]orrupt [a]ctivity is [a]gainst the [m]anifest [w]eight of the [e]vidence[.]
 {¶ 14} "[2.] The [t]rial [c]ourt [e]rred to the [p]rejudice of [a]ppellant when it [o]rdered [c]onsecutive [s]entences[.]
 {¶ 15} "[3.] The [t]rial [c]ourt [e]rred in [a]ssessing [c]ourt [c]osts to [appellant] after [f]inding [appellant] to be [i]ndigent[.]
 {¶ 16} "[4.] The trial court abused its discretion by denying appellant's motions to sever the charges to the prejudice of [appellant].
 {¶ 17} "[5.] [Appellant's] convictions for grand theft and breaking and entering are not supported by sufficient evidence.
 {¶ 18} "[6.] [Appellant's] convictions for grand theft and breaking and entering are against the manifest weight of the evidence."
 {¶ 19} Appellant first, fifth and sixth assignments of error are interrelated and will be addressed in a consolidated manner. Under the first assignment of error, appellant contends that his conviction for engaging in a pattern of corrupt activity was against the manifest weight of the evidence. For his fifth and sixth assignments of error, appellant alleges that his convictions for grand theft auto and breaking and entering were not supported by sufficient evidence and were against the manifest weight of the evidence.
 {¶ 20} When reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387; State v. Martin (1983),20 Ohio App.3d 172, 175; State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 5.
 {¶ 21} Unlike a sufficiency of the evidence challenge, a manifest weight of the evidence claim contests the believability of the evidence presented. Schlee at 6. Thus, "[t]he issue when reviewing a manifest weight of the evidence challenge is whether `there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" State v. Wright
(Mar. 29, 2002), 11th Dist. No. 2000-P-0128, 2002 Ohio App. LEXIS 1497, at 12. See, also, State v. Nields (2001), 93 Ohio St.3d 6, 25.
 {¶ 22} In order for an appellate court to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.Thompkins at 387.
 {¶ 23} On the other hand, when reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. Schlee, supra, at 5-6. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307. Moreover, the weight to be given to the evidence and the witnesses's credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 24} Appellant was found guilty of violating R.C. 2923.32(A)(1), engaging in a pattern of corrupt activity, which states that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity[.]" An enterprise is statutorily defined as including "any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). Corrupt activity means "engaging in, attempting to engage in, conspiring to engage in * * * (2) Conduct constituting any of the following: * * * (a) a violation of section * * * 2911.13, * * * 2921.12 * * *." R.C.2923.31(I)(2)(a). To constitute a pattern of corrupt activity, there must be two or more incidents of corrupt activity "that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).
 {¶ 25} Here, the indictment alleges that appellant was associated with an enterprise engaged in the sale and distribution of cigarettes, cigarette rolling papers, and pornographic magazines and that he participated in the affairs of this enterprise through a pattern of corrupt activity. The indictment specifically states the predicate offenses constituting the corrupt activity, i.e. that the defendant violated R.C. 2911.13 and 2921.12, both of which constitute "corrupt activity" as defined by statute.
 {¶ 26} Appellant maintains that his conviction for engaging in a pattern of corrupt activity was against the manifest weight of the evidence as the state did not sufficiently demonstrate that he actually participated in this enterprise. In support of this contention, appellant asserts that the evidence produced by the state to support the allegation was not credible.
 {¶ 27} A review of the evidence in this case reveals the following. Walters testified that during a conversation with appellant in jail, appellant told him that he had some audio equipment and cigarettes to sell. Walters stated that appellant told him about how appellant and Watson broke into one of the stores. Furthermore, appellant referred to Watson as his partner.
 {¶ 28} Moreover, Dercole's testimony also demonstrated a pattern of corrupt activity because he related that appellant brought cartons of cigarettes, rolling papers and pornographic magazines to his apartment. According to Dercole, he was to sell the merchandise, keep a portion of the sale and give the remainder of the money to appellant. The jury found the state's witnesses to be more credible. Based on the testimony at trial, we do not see how the jury lost its way and created a manifest miscarriage of justice. Hence, appellant's conviction for engaging in a pattern of corrupt activity was not against the manifest weight of the evidence.
 {¶ 29} Now turning to the convictions for grand theft auto and breaking and entering, appellant argues that the convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Appellant was found guilty of violating R.C. 2911.13(A), breaking and entering, which states that: "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01
of the Revised Code, or any felony." The jury also found appellant guilty of grand theft, in violation of R.C. 2913.02(A)(1), which sets forth that: "no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(B)(2) provides that "* * * [i]f the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree. * * *"
 {¶ 30} At trial, there was testimony produced as to the contents of a surveillance tape that the state produced which showed appellant in the immediate vicinity of the store on the day the merchandise was missing. There was also testimony that some of the merchandise was found in appellant's home.
 {¶ 31} Several of the owners of the stores that were broken into testified at the trial. Their testimony revealed that a trespass had occurred at their store and that merchandise had been removed. Specifically, there was testimony that telephone wires were cut and that rocks or bricks were thrown through glass windows and doors to gain entry into the stores. Further, Sergeant Iliano revealed that a shoe print at the crime scenes matched a pair of shoes that was obtained from appellant's apartment. That evidence, coupled with the testimony of Walters and Dercole, demonstrated that there was sufficient evidence to support the convictions and that the jury clearly did not lose its way or create such a manifest miscarriage of justice that the convictions must be reversed. This is not a case where the evidence weighs heavily in favor of appellant, meriting a reversal of the convictions. Appellant's first, fifth, and sixth assignments of error are overruled.
 {¶ 32} For his second assignment of error, appellant argues that the trial court erred in imposing consecutive sentences.
 {¶ 33} A reviewing court will not reverse a sentence unless an appellant demonstrates that the trial court was statutorily incorrect or that it abused its discretion by failing to consider sentencing factors.State v. Chapman (Mar. 17, 2000), 11th Dist. No. 98-P-0075, 2000 WL 286684, at 10. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. An appellate court may modify or vacate a sentence if it is contrary to law. R.C. 2953.08(G)(2). However, when the trial court does not sufficiently state reasons for the consecutive sentences, the matter should be remanded to the trial court for clarification. See, generally, State v. Jones (2001), 93 Ohio St.3d 391,400.
 {¶ 34} Before imposing consecutive sentences, a trial court must make the findings contained in R.C. 2929.14(E)(4) on the record. Statev. Fitzpatrick (Dec. 1, 2000), 11th Dist. No. 99-L-164, 2000 WL 1774139, at 5, citing State v. Kase (Sept. 25, 1998), 11th Dist. No. 97-A-0083, 1998 WL 682392, at 1-2. First, the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C. 2929.14(E)(4). Second, the trial court must determine that one of the other factors listed in R.C. 2929.14(E)(4) also exists: (a) the offender was awaiting trial or sentencing or was under community control sanction, (b) the harm caused by the offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offender's conduct, or (c) the offender's history of criminal conduct proves that consecutive sentences are needed to protect the public from future crime. State v.Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 WL 635951, at 4.
 {¶ 35} If a trial court merely asserts that it has reviewed the provisions in R.C. 2929.14, that alone, is not a sufficient finding on the record of the court's reasoning relative to the statutory factors for imposing a particular sentence. Fitzpatrick, supra, at 5. The findings mandated by R.C. 2929.14 and the reasons supporting those findings must be made at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, at ¶ 20.
 {¶ 36} Furthermore, when consecutive sentences are imposed under R.C. 2929.14, the trial court must also follow the requirements of R.C.2929.19(B)(2)(c), which states that the trial court justify the imposition of consecutive sentences:
 {¶ 37} "(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 38} "* * *
 {¶ 39} "(c) If it imposes consecutive sentences under section 2929.14
of the Revised Code, its reasons for imposing the consecutive sentences[.]"
 {¶ 40} In the instant matter, the trial court satisfied the initial requirement of R.C. 2929.14(E)(4) by finding in its judgment entry that consecutive sentences were necessary to protect the public from future crime or to punish appellant, and were not disproportionate to the seriousness of appellant's conduct and the danger he poses to the public. The court also met the second requirement under R.C. 2929.14(E)(4) because in its entry it determined that "the harm caused by the multiple offenses committed by [appellant] was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of [appellant's] conduct." See R.C. 2929.14(E)(4)(b). In its judgment entry, the court indicated that appellant's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes" by appellant. This was also mentioned during the sentencing colloquy.
 {¶ 41} However, the trial court must also justify the imposition of consecutive sentences as required by R.C. 2929.19(B)(2)(c). To support its finding, the trial court explained that:
 {¶ 42} "* * * [appellant's] victims suffered serious economic harm, that on a crime spree of 50 days in nine communities, approximately $36,000 was stolen from victims; that the crime was committed as part of organized crime. That the offender previously served a prison term; he has been to prison on three prior occasions, he has also spent months in various municipal jails. That the offenses were committed while [appellant] was under post release control; that he * * * was out approximately three days before the first offense was committed.
 {¶ 43} "The Court finds [appellant] is more likely to commit an offense in the future * * *. Also prior criminal history, including juvenile delinquency, very extensive juvenile and adult record. * * *
 {¶ 44} "Rehabilitation has been a failure after previous convictions * * *; no actual remorse * * *. [Appellant] is impulsive, has low tolerance for frustration, no motivation to accept corrections or learn from his mistakes, no insight or judgment, simplistic thinking."
 {¶ 45} The court also found that "the shortest prison term will demean the seriousness of [appellant's] conduct; the shortest term will not adequately protect the public from future crime by [appellant] or others. The Court finds that the reasons stated on the record that [appellant] poses the greatest likelihood of committing future crimes." The trial court further explained that "consecutive sentences are necessary to protect the public from future [crime], in order to punish [appellant], and that [appellant] committed multiple offenses while [appellant] was under post release control. [Appellant's] history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by [appellant]." It is our position that the foregoing colloquy satisfies the trial court's burden under R.C. 2929.19(B)(2)(c) that the trial court adequately stated its reasons on the record. Appellant's second assignment of error is not well-founded.
 {¶ 46} In the third assignment of error, appellant asserts that the trial court erred in assessing court costs to him after finding that he was indigent.
 {¶ 47} R.C. 2947.23 governs the trial court's authority to impose court costs on a defendant who is convicted of a felony, and section (A)(1) states that "[i]n all criminal cases, * * * the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs. * * *" R.C.2949.14, which was enacted after R.C. 2947.23 provides that "[u]pon conviction of a non-indigent person for a felony, the clerk of the court of common pleas shall make and certify under his hand and seal of the court, a complete itemized bill of the costs made in such prosecution * * *. Such bill of costs shall be presented by such clerk to the prosecuting attorney, who shall examine each item therein charged and certify it if correct and legal. Upon certification by the prosecuting attorney, the clerk shall attempt to collect the costs from the person convicted."[2]
 {¶ 48} A recently released opinion from the Fifth Appellate District states that:
 {¶ 49} "R.C. 2949.14 does not govern the court's ability to order costs. The statute is directed at the ability of the clerk of courts to collect the costs from the person convicted. While R.C. 2949.14 provides a collection mechanism only for non-indigent defendants, nothing in R.C.2947.23 prohibits the court from assessing costs to an indigent defendant as part of the sentence. In the event the indigent defendant at some point ceases to be indigent, the clerk could then collect costs pursuant to the procedure outlined in R.C. 2949.14. Ohio law does not prohibit a judge from including court costs as part of the sentence of an indigent defendant. * * *." State v. White, 5th Dist. No. 02CA23, 2003-Ohio-2289, at ¶ 9.
 {¶ 50} We are persuaded by the reasoning of the Fifth District as it seems to mirror the analysis that would have been utilized by our court in a decision that was released prior to the Heil case. In Statev. Pasqualone (2000), 140 Ohio App.3d 650, the issue was mentioned in a footnote because the appeal was dismissed for lack of a final appealable order. However, we recognized a distinction between the imposition of fines and court costs and noted that:
 {¶ 51} "`In both criminal and civil cases, costs are taxed against certain litigants for the purpose of lightening the burden on taxpayers financing the court system. As we view it, statutory provisions for payment of court costs were not enacted to serve a punitive, retributive, or rehabilitative purpose, as are fines.'
 {¶ 52} "In this present matter, the trial court imposed court costs, not fines, against appellant. We also note that R.C. 2947.23
commands that `[i]n all criminal cases, * * * the judge * * * shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs.' Even if the trial court was required to consider appellant's ability to pay court costs, `Ohio law does not forbid a trial court from imposing court costs on an indigent defendant convicted of a felony.' * * *" Id. at 659, quoting Strattmanv. Studt (1969), 20 Ohio St.2d 95, 102, and State v. Payne (Dec. 20, 1999), 5th Dist. Nos. 99CAA05024, 99CAA05025, 99CAA05026, 99CAA05027, and 99CAA05028, 2000 WL 1405, at 3.
 {¶ 53} Hence, it is our position that for the foregoing reasons, the imposition of court costs on appellant is not an infringement of his rights nor does it violate any statute. Appellant's third assignment of error lacks merit.
 {¶ 54} For his fourth assignment of error, appellant argues that the trial court erred by denying his motion to sever the charges.
 {¶ 55} Crim.R. 8(A) provides that joinder of offenses is proper if the offenses "are based on the same act or transaction." However, "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses * * * in an indictment, * * * the court shall order an election or separate trial of counts, * * * or provide such other relief as justice requires." Crim.R. 14. In order to prevail on a claim that the trial court erred in denying a motion to sever charges for separate trials, an appellant "has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial."State v. Torres (1981), 66 Ohio St.2d 340, syllabus.
 {¶ 56} Appellant has contended that the thirty-one count indictment against him which stemmed from ten alleged incidents in more than five counties created confusion for the jury and prejudiced the jury in its consideration of his guilt or innocence. However, it is our view that there was no confusion. The jury was able to sift through the evidence because it found appellant not guilty of certain offenses. Thus, since the jury was able to filter through the evidence, it is our position that there was no confusion on the part of the jury. Furthermore, we fail to see how appellant's rights were prejudiced or how he was denied a fair trial. Appellant's fourth assignment of error is without merit.
 {¶ 57} For the foregoing reasons, appellant's assignments of error are not well taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
Cynthia Westcott Rice, J., concurs.
William M. O'Neill, J., dissents with dissenting opinion.
[1] Dercole was charged for his involvement in selling the cigarettes, but he was sentenced prior to giving his testimony in this matter.
[2] This court in State v. Heil (Mar. 30, 2001), 11th Dist. No. 2000-G-2268, 2001 Ohio App. LEXIS 1552, stated that based on the use of "non-indigent" in R.C. 2949.14, the intent was to relieve indigent defendants who were convicted of felonies of the burden of court costs. However, the Supreme Court of Ohio vacated that decision in State v.Heil, 95 Ohio St.3d 531, 2002-Ohio-2841.