By the Court.
 

 The plaintiff in error, Rodney Ford, has filed a petition in error as of right, claiming that his constitutional right was infringed upon the trial in the court below, in which he was defendant upon a charge of murder in the first degree, was convicted of murder in the first degree without a recommendation of mercy, and sentenced to death under the statutes. The state has moved to dismiss the petition in error for the reason that no debatable
 
 *293
 
 question arises under the Constitution of the United States or of the state of Ohio.
 

 We have considered this record with unusual care, both upon the motion for leave to file petition in error and upon the motion to dismiss the petition in error filed as of right. The only serious question in the case arises with reference to the withdrawal of Mr. Charles Elston, who was the attorney for Ford in the first stages of the trial below, and the subsequent appointment by the court of Mr. John Scanlon and Mr. Edward M. Ballard to continue with the trial as attorneys for Ford.
 

 It appears from the record that upon November 14,1928, an indictment was returned naming Rodney Ford, Tod Messner, Robert Zwick, and Breck Lutes, charging them all with murder in the first degree, arising out of the shooting of Peter Dumele, marshal of North College Hill, in Hamilton county, Ohio, upon April 8, 1928. Ford was arraigned upon November 15 in the presence of Mr. Charles Elston, whom he had employed as his attorney, and the case was set for trial. Upon December 12, Mr. Elston started to qualify the prospective jurors. Upon the night of December 12, Robert Andres, one of the eyewitnesses of the murder charged in the indictment, was himself murdered, and an attempt made to destroy identification of his body by burning it. At that time Ford, Lutes, and Messner had been apprehended, but Zwick was still at large. Upon December 14, Mr. Elston applied to the court to withdraw as counsel for Ford, stating that he believed it would be for his client’s best interest. Ford, who was present, did not object to Mr. Elston’s withdrawal, but suggested the employment of a Mr. John
 
 *294
 
 Egan, of Dayton, as his attorney. The court personally had Mr. Egan called by long-distance telephone. He came to Cincinnati and conferred with the court, but refused to accept the employment because of the court’s unwillingness to continue the case for two weeks. Upon December 17 the court appointed Mr. Edward M. Ballard, an attorney of many years experience in criminal cases, and Mr. John Scanlon, a lawyer engaged in an active general practice, to represent the defendant. Ford, who was present in court at that time, stated that Mr. Ballard would be acceptable if Mr. Heindle could not be secured. Mr. Heindle was not secured. All of the above proceedings took place out of the presence of the jury. Upon December 19 the court overruled a motion to dismiss the panel. Upon December 20 the jury was sworn, counsel for Ford having exercised only nine of his sixteen peremptory challenges. Upon Friday, December 21, the opening statement of counsel was made, and testimony was not taken in the case until Wednesday, December 26. Hence nine days intervened between the appointment of Mr. Ballard and Mr. Scanlon and the first putting on of witnesses on behalf of the state.
 

 The action of the court in permitting Mr. Elston to withdraw and appointing Mr. Ballard and Mr. Scanlon is challenged as constituting a violation of Ford’s constitutional rights of defense.
 

 Section 10 of Article I of the Ohio Constitution in its material portions provides that “In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.”
 

 Section 16 of Article I provides that “All courts shall be open, and every person, for an injury done
 
 *295
 
 him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.”
 

 It is also claimed that the action of the court violated the Sixth Amendment to the Constitution of the United States, depriving the accused of his right “to have the assistance of counsel for his defense.”
 

 It has been decided that the Sixth Amendment to the Constitution of the United States does not apply to trials arising under state law.
 
 Minn. & St. L. Rd. Co.
 
 v.
 
 Bombolis, Admr.,
 
 241 U. S., 211, 60 L. Ed., 961, 36 S. Ct., 595. We therefore overrule this contention, and proceed to consider whether under Section 10 of Article I of the Ohio Constitution Ford was entitled under this record to employ counsel of his own selection, to the exclusion of any counsel appointed by the court, and whether he was denied justice under Section 16 of Article I of the Ohio Constitution.
 

 Was Ford entitled under the circumstances of this case to an absolute right to employ counsel of his own choosing, regardless of the stage of the trial at which Mr. Elston withdrew and all of the other circumstances set forth in the record?
 

 Ford did not object to the withdrawal of Mr. Elston. However, we question the judgment of the court in permitting Mr. Elston to withdraw. No prejudice could have resulted to Ford by the continuance in his case of the attorney whom he had hired who had made an exhaustive preparation of the case. Upon his withdrawal, Mr. Elston agreed, and the court ordered him, to turn over to his successors the results of his efforts in preparing the defense. The court later, when he appointed Mr
 
 *296
 
 Ballard and Mr. Scanlon, enjoined upon them the duty of getting into touch with Mr. Elston, which they did.
 

 The court personally endeavored to secure for Ford counsel of his own selection, but when this attorney, Mr. Egan, of Dayton, insisted upon a lengthy continuance of a case already in progress, the court was justified in holding that the convenience of the court, the jury, and the witnesses was paramount to the right of Ford to counsel of his personal choice.
 
 People
 
 v.
 
 Goldenson,
 
 76 Cal., 328, 19 P., 161;
 
 Delk
 
 v.
 
 State,
 
 99 Ga., 667, 26 S. E., 752. This was particularly true in view of the atmosphere created by the spiriting away and killing of Andres, who was considered to be the only eyewitness to the murder of Dumele. While it is true that the accused is always entitled to the benefit of counsel, it does not follow that this rule can be extended to the extreme urged under this petition in error filed as of right. Under his theory, the accused would be entitled to halt for an indefinite time the prosecution of his case if for one reason or another counsel of his own choosing refused to accept the employment. Under Section 13617, General Code, if the accused is without and unable to employ counsel, the court shall assign him counsel, not exceeding two, who shall have access to such accused at all reasonable hours. Under the circumstances of this record, Ford was without and unable to employ counsel. We think that the court did not err in insisting that the case be prosecuted to a conclusion.
 

 We also think that Ford was not prejudiced by the appointment of Mr. Ballard and Mr. Scanlon. He did as a matter of fact consent that Mr. Ballard
 
 *297
 
 should act for him, and, under the circumstances in which he and Mr. Scanlon did act for him, with the co-operation of Elston, Ford virtually had three lawyers working for him, instead of one, and one of them was an attorney of his own choosing. Under the express instruction of the court, Mr. Ballard and Mr. Scanlon had the benefit of the exhaustive preparation of Mr. Elston and of constant counsel with him. It is contended by the state, and not denied by counsel for Ford, that Mr. Ballard and Mr. Scanlon had in their possession, before going into the trial, the complete record of the coroner’s inquest, the record of the preliminary hearing, and that every one of the defense’s witnesses, relatives of Ford, were readily available. Ford’s defense was an alibi, and therefore not complicated to prepare.
 

 After the murder of Andres, each day’s delay added to the tension of the state’s witnesses, and we think that the court did not err in making the appointment and insisting that the case proceed within a reasonable time. Ford had, within the meaning of the Ohio Constitution, the benefit of counsel.
 

 It is further seriously urged that prejudicial error was committed because the court ordered that Ford not be permitted to consult with his attorneys except in the presence of the. sheriff. The defendant has a right to a reasonable opportunity to consult privately with his counsel without having other persons present.
 
 State, ex rel. Tucker,
 
 v.
 
 Davis,
 
 9 Okl. Or., 94, 130 P., 962; 44 L. R. A. (N. S.), 1083, and note; Section 13617, General Code;
 
 Thomas, Warden,
 
 v.
 
 Mills,
 
 117 Ohio St., 114, 121, 157 N. E., 488, 54 A. L. R., 1220.
 

 However, we think the court did not order that
 
 *298
 
 Ford not be permitted to consult with Ms attorneys except in the presence of the sheriff. Counsel for the state, after Mr. Elston’s withdrawal, but in his presence, and in the presence of Ford, made the following statement:
 

 “Mr. Sibbald: May it please the court, in view of what has occurred, we desire that the court instruct the Sheriff that the jailor — that the defendants Messner, Lutes, Ford and a prisoner in the jail under a stay of execution, one Edward Scott, shall not be permitted to see visitors unless, of course, that the court or the Sheriff himself should know who they are and he pass them, excepting of course also their lawyers, until a further order of this court.
 

 “The Court: The court so orders; the Sheriff will pursue that course of conduct.
 

 “Sheriff Anderson: That will be granted.
 

 “The Court: No' one is to see them unless you grant the request or the court grants their request.
 

 ‘ ‘ Sheriff Anderson: Except their counsel.
 

 ‘ ‘ The Court: Except their counsel.
 

 “Sheriff Anderson: All communications go through their attorneys ?
 

 “The Court: All commumcations go through their attorneys.
 

 “Chief Deputy Sheriff Sperber: You might add, no one to speak to them except some one be in attendance.
 

 “The Court: Yes, and if anybody is permitted to speak to them, that an officer from your staff be with them. The Ford case is continued for trial until Monday morning ten o’clock. Mr. Elston, in order that we may proceed with the trial, will you turn over to Mr. Egan your defense?
 

 
 *299
 
 “Mr. Elston: Yes, yonr Honor.
 

 ‘ ‘ The Court: And confer with him.
 

 “Mr. Elston: I will give him every assistance possible.
 

 ‘ ‘ The Court: That is all, just so the defendant is given the benefit of that.
 

 “Mr. Elston: Yes, I desire to do that.”
 

 Since the application by the state was that Messner, Lutes, Ford, and another prisoner should not be permitted to see visitors “unless, of course, that the court or the sheriff himself should know who they are and he pass them, excepting of course also their lawyers,” it is evident that the application and the order, so far as Ford is concerned, related not to private conferences between Ford and whatever attorney he should secure, but to private conferences between Ford and lay persons. This is emphasized by the fact that the court says, “No one is to see them unless you grant the request or the court grants their request * * * except their counsel.”
 

 Three times during the course of the application above quoted a specific exception was made with regard to counsel for Ford and his codefendants. This fact was stressed by the injunction twice repeated, that communications were to go to the prisoners through counsel. As we read the record, the supplementary application, that no one is to speak to the prisoners without some one in attendance, relates not to lawyers, but to lay persons only. That this was the understanding of the order is shown by the fact that, in the motion which Ford personally signed, which was presented by Mr. Ballard upon "Wednesday, December 19, in the absence of
 
 *300
 
 the jury, praying for a continuance, there is not the slightest claim made that Ford had not been granted an interview with counsel. In another motion presented, applying for a change of venue, nothing whatever is said about counsel being denied private interviews with Ford. Ford’s counsel did not claim in their brief upon motion for leave to file petition in error, nor in their brief upon application for rehearing, nor in the argument, that they did not as a matter of fact confer constantly with Ford in private throughout the entire trial. On the other hand, in the brief of counsel for the state, the statement is made that Ford’s attorneys had constant private conferences with Ford, and the same statement was made in this court upon hearing of the motion for leave to file petition in error, and not denied. Moreover, the trial court himself, upon December 19, said: “File every motion you want to preserve this defendant’s rights. Maybe you better take the defendant and take the brother out some place in private.” To which Mr. Ballard replied, “We can talk right in the middle of this court room as privately as anywhere.” If Mr. Ballard and Mr. Scanlon had been refused private conferences with Ford that would have been the natural occasion so to state, but no such statement was made. The brief of counsel for Ford upon motion for leave to file petition in error states that the court ordered counsel not to confer with Ford privately between December 14 and December 17. Ballard and Scanlon were appointed December 17.
 

 This record does not show that Ford’s attorneys ever applied to see Ford in private for the preparation of their case and were denied, nor that Ford
 
 *301
 
 ever applied to see them privately and was denied. They do not claim that they did not see Ford in private. They claim that Mr. Egan, who refused to accept the appointment, did apply once to see Ford in private and was refused. Since he was not Ford’s attorney, we cannot consider that this fact bears upon the question. We read the order as applying to persons other than attorneys, and it was so acted upon evidently in the trial of the case, and hence we feel that no constitutional question is presented under this branch of the case.
 

 Under the circumstances, we are convinced that no prejudice occurred; that Ford had a full and fair trial upon the merits; that his constitutional rights were fully preserved; that he was amply and ably defended; and that no debatable question arises under the Constitution of the United States or of the state of Ohio.
 

 Motion to dismiss petition in error sustained.
 

 Marshall, C. J., Kinkade, Day and Allen, JJ., concur.