THE STATE OF OHIO, APPELLEE, *v.* MILLIGAN, APPELLANT.

[Cite as State *v.* Milligan (1988), 40 Ohio St. 3d 341.]

(No. 87-646—Submitted September 20, 1988—Decided December 30, 1988.)

*Michael Ward,* prosecuting attorney, and *C. David Warren,* for appellee.

*Sunbury, Underwood, Eyerly & Rosenberg* and *Gloria Eyerly,* for appellant.

*Tataru, McInturff, Wallace & Warner* and *Roger Warner,* urging reversal for *amicus curiae,* Ohio Association of Criminal Defense Lawyers.

SWEENEY, J.

I

Appellant contends that the interception and clandestine recording of his telephone conversation with his attorney violated his right to counsel in contravention of Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution. This court has previously observed that the right to counsel afforded by Section 10, Article I of the Ohio Constitution is comparable to but independent of similar guarantees provided by the Sixth Amendment to the United States Constitution. See *Ford* v. *State* (1929), 121 Ohio St. 292, 295, 168 N.E. 139, 140. Implicit within the meaning of Section 10, Article I, and the analogous protections of Section 16, Article I, is the right of a criminal defendant to consult privately with his attorney. See *Ford* v. *State, supra,* at 295, 297, 168 N.E. at 140-141; *Thomas* v. *Mills* (1927), 117 Ohio St. 114, 126, 157 N.E. 488, 493, and paragraph one of the syllabus (relying upon Section 16, Article I).

The state urges, however, that the right to consult counsel was not violated in the case *sub judice* because appellant was aware of the presence of Bartlett and thus had no reasonable expectation of privacy within the county jail. Consequently, the state maintains that any evidence obtained in such surroundings is not subject to suppression. In support of this view, appellee cites *Katz* v. *United States* (1967), 389 U.S. 347. *Katz,* however, is inapposite since its focus was upon evidence which was allegedly the product of an illegal search and seizure. In that context, the court remarked:

"* * * What a person knowingly exposes to the public, even in his own home or office, is not a subject of *Fourth Amendment protection."* (Emphasis added.) *Id.* at 351.

*Katz* therefore was not intended, nor should it be interpreted, to suggest that the Sixth Amendment right of a criminal defendant to privately consult his attorney ends at the prison gates. To the contrary, the Supreme Court had previously held that: "* * * [I]t may be assumed that even in a jail, or perhaps especially there, *the relation-*

*ships which the law has endowed with particularized confidentiality must continue to receive unceasing protection * * *."* (Emphasis added.) *Lanza* v. *New York* (1962), 370 U.S. 139, 143-144. Principal among such relationships is the one maintained between an attorney and his client.

*Lanza* illustrates the crucial distinction between the protections of the Fourth and Sixth Amendments. Relative to the Fourth Amendment, a reasonable expectation of privacy is a prerequisite to a claim that an illegal search and seizure were conducted. See *Lewis* v. *United States* (1966), 385 U.S. 206. The Sixth Amendment right to counsel is much broader in that it fosters private communication between attorney and client, to ensure adequate representation during criminal proceedings. See *United States* v. *Levy* (C.A. 3, 1978), 577 F. 2d 200, 208-209. Thus, the issue is not whether appellant had a reasonable expectation of privacy at the jail, but whether he was afforded the opportunity to converse with his attorney in private so as to freely discuss his case and his legal defense prior to trial. If such privacy cannot be ensured, owing to the location of telephones in an unsecured area, a defendant should be informed of his right to privately communicate with counsel. The failure of the authorities to ensure privacy for such communications cannot in turn be used to establish that the accused did not have a reasonable expectation of privacy. See *In re Qualls* (1943), 58 Cal. App. 2d 330, 136 P. 2d 341; *In re Snyder* (1923), 62 Cal. App. 697, 217 P. 777. Consequently, a reasonable expectation of privacy has no bearing on the right to effective assistance of counsel.

The state nevertheless contends that our holding in *State* v. *Sargent* (1975), 41 Ohio St. 2d 85, 70 O.O. 2d 169, 322 N.E. 2d 634, permits the use at trial of evidence obtained through an official intrusion upon the attorney-client relationship. We do not agree. In *Sargent,* we emphasized that "the trial judge was careful to limit the testimony to what the patrolman observed of appellee's conduct during the call; *no testimony as to the content of that conversation was allowed."* (Emphasis added). *Id.* at 89, 70 O.O. 2d at 171, 322 N.E. 2d at 638.

Thus, *Sargent* is clearly distinguishable from the case at bar. The evidence at issue in *Sargent* concerned the demeanor of the defendant at the time of his conversation with his attorney. Such demeanor evidence would have been obtainable irrespective of the nature of the conversation or the identity of the person with whom the defendant was speaking. In short, it bore no relationship to the content of the attorney-client conversation.

Accordingly, we hold that evidence obtained through the unauthorized interception of a private conversation between a criminal defendant and his attorney is subject to suppression pursuant to Section 10, Article I of the Ohio Constitution.

II

Having concluded that a constitutional violation has occurred, we must now consider what remedy is appropriate. The state maintains that mere suppression of the illegally obtained information is sufficient. Appellant responds that dismissal of the indictment is the only effective deterrent where the confidentiality of the attorney-client relationship has been breached. Accordingly, appellant argues that *any* interception of a confidential communication between attorney and client requires dismissal of the indictment. It is our view that neither mere suppression nor auto-

matic dismissal is appropriate in every case irrespective of the circumstances.

Appellant argues persuasively that the acquisition by an investigating officer of information communicated between an attorney and his client relative to trial strategy is a constitutional violation for which suppression is an inadequate remedy. Since the information obtained would in most cases not be admissible evidence, it is contended the motivation for obtaining such information would be to obtain a tactical advantage at trial or to secure other information which would lead to apparently untainted evidence. In this regard the California Supreme Court observed:

"The exclusionary remedy is also inadequate since there would be no incentive for state agents to refrain from such violations. Even when the illegality is discovered, the state would merely prove its case by the use of other, untainted evidence. The prosecution would proceed as if the unlawful conduct had not occurred." *Barber* v. *Municipal Court* (1979), 24 Cal. 3d 742, 759, 157 Cal. Rptr. 658, 668, 598 P. 2d 818, 828. See, also, *State* v. *Holland* (1985), 147 Ariz. 453, 456, 711 P. 2d 592, 595; *Commonwealth* v. *Manning* (1977), 373 Mass. 438, 442-445, 367 N.E. 2d 635, 638-639; *State* v. *Cory* (1963), 62 Wash. 2d 371, 377-378, 382 P. 2d 1019, 1022-1023.

The state argues with equal persuasiveness that the automatic-dismissal rule urged by appellant would result in the dismissal of indictments irrespective of the nature of the communication or knowledge of its contents on the part of the prosecution.

It is therefore our conclusion that the test announced by the United States Supreme Court in *Weatherford* v. *Bursey* (1977), 429 U.S. 545, strikes the appropriate balance between the interest of a criminal defendant to engage in free and confidential discussions with his attorney and the interest of the state in ensuring that a prosecution not be jeopardized by the unauthorized acts of overzealous law enforcement officers which result in no prejudice to the defendant. This balance, the *Weatherford* court concluded, could be maintained, case by case, through analysis of the following factors: (1) whether the government deliberately intruded in order to obtain confidential and privileged information, (2) whether the government obtained directly or indirectly any evidence which was or could be used at trial as a result of the intrusion, (3) whether any information obtained was or could be used in any manner detrimental to the defendant, and (4) whether details about trial preparation were learned by the government. See *Weatherford, supra,* at 554 and 558.

The aforementioned factors must be considered in the first instance by the trial court in the context of the intercepted communication. Thus, where the unauthorized interception of a private conversation between a criminal defendant and his attorney results in substantial prejudice to the defendant in the preparation of his defense, the trial court may, in the exercise of its sound discretion, take such action as is appropriate, including dismissal of the indictment. In order to protect the confidentiality of the communication, any review by the trial court should be accomplished through an *in-camera* inspection of its contents by the court and the parties. Such procedure presents no practical difficulties in the case *sub judice* since there exists tangible evidence of the communication in the form of a tape recording. However, where the information gained by governmental authorities is derived from the

testimony of the officer who overheard the conversation, difficult legal and evidentiary problems are presented. As an initial matter, it is necessary to protect the confidentiality of the communication while allowing for the development of a record subject to further judicial review. Accordingly, any testimony should be taken *in camera* subject to transcription under seal. Moreover, while the fortuitous circumstance of a tape recording allows for a review thereof in the case *sub judice*,[1] testimony relative to what was actually overheard necessarily depends upon knowledge possessed solely by the testifying officer. Consequently, under such circumstances, it would be extremely difficult if not impossible for the defendant to demonstrate actual knowledge on the part of the officer of information prejudicial to his case.

Given that such knowledge is within the exclusive control of the government, the burden is upon the state, after a prima facie showing of prejudice by the defendant, to demonstrate that the information gained was not prejudicial to the defendant. See *Commonwealth* v. *Manning, supra,* at 442-443, 367 N.E. 2d at 638.

The judgment of the court of appeals is reversed for the reasons stated herein, and the cause is remanded to the trial court for proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.

---

[1] This is not to suggest that the tape recording of the governmental intrusion in any way ameliorates the severity of the constitutional violation. If anything, such practices compound the violation and should be universally condemned.