OPINION
{¶ 1} The defendant-appellant, David Kimmel, appeals the August 22, 2003 judgment of the Marion Municipal Court, denying his motion for a new trial, and the April 3, 2003 judgment of that same court sentencing him to ninety days in jail on his conviction for operating a motor vehicle while intoxicated.
 {¶ 2} On the night of November 15, 2002, Kimmel and his wife, Vicki, went to dinner with a group of friends at Buca di Beppo, an Italian restaurant in Worthington, Ohio. While waiting for their table, Kimmel drank a beer. Sometime between 10:00-11:00 p.m., the group left the restaurant. Kimmel drove his wife and two other couples back to Marion, Ohio, where they lived, and they went to Mickeli's, a local bar. They remained at Mickeli's for approximately forty-five minutes during which time Kimmel ordered a beer and consumed at least one-half of it. The group then left, and Kimmel drove one couple, Bradley and Mia Campbell, home. The Kimmels and the other remaining couple, Steven and Jill Fry, then went to BW3's, a bar and eatery in Marion. While at BW3's, Kimmel ordered another beer and drank at least one-half of it as well. After approximately thirty to forty-five minutes, the group left and headed home with Kimmel driving.
 {¶ 3} Kimmel proceeded to drive on State Route 529 in order to go home. At some point, the roadway was blocked by a tow truck and a police cruiser, which were at the scene of a one-car accident. Kimmel stopped his minivan and waited a few minutes to see if the roadway would clear. Realizing that clearing the accident could take a while, Kimmel decided to turn the minivan around and proceed home via another route. In order to do so, Kimmel attempted to back into a driveway but was unsuccessful and drove into a ditch. Kimmel and Steven Fry exited the vehicle and attempted to push it out of the ditch while Vicki steered.
 {¶ 4} Upon witnessing Kimmel drive into the ditch, Trooper Todd Cunningham, who was at the scene of the one-car accident, approached Kimmel and Steven and offered to send the tow truck to help him once the prior accident scene was cleared. However, Trooper Cunningham became suspicious that Kimmel was under the influence of alcohol while driving and had Kimmel perform three field sobriety tests. After these tests, Trooper Cunningham concluded that Kimmel was impaired and driving in violation of R.C. 4511.19(A). He placed Kimmel under arrest and drove him to the local patrol post to administer a breath test to him.
 {¶ 5} Kimmel requested that he be allowed to call his attorney, and the trooper permitted him to do so. After speaking with an attorney for a number of minutes, Kimmel agreed to take the breath test. The test was unsuccessful in achieving a result, which Trooper Cunningham believed was caused by Kimmel not fully breathing into the machine. Based on this belief, the trooper wrote this as a refusal to take the test. Kimmel was then cited for operating a motor vehicle while intoxicated in violation of R.C. 4511.19(A)(1), commonly referred to as "DUI," and for failure to control his vehicle in violation of R.C. 4511.202.
 {¶ 6} Kimmel entered a plea of not guilty to both charges. Prior to trial, counsel for Kimmel filed a motion in limine, requesting that the prosecution not be permitted to introduce any evidence of Kimmel's prior DUI conviction. This motion was overruled and the matter proceeded to a jury trial on the DUI allegation on April 2, 2003. At the conclusion of the trial, the jury found Kimmel guilty of this, and the trial court later found him guilty of failing to control his vehicle. Subsequently, Kimmel filed a motion for a new trial. A hearing was held on this motion on April 24 and July 3, 2003, and the trial court overruled this motion on August 22, 2003. This appeal followed, and Kimmel now asserts three assignments of error.
The trial court erred when it permitted the arresting officerto testify in the state's case about defendant's prior duiconviction.
 The trial court erred when it failed to dismiss defendant'sdui conviction after finding that the state's only witnessillegally intercepted, copied and reviewed a privatetwenty-minute telephone conversation between defendant and hiscounsel, made at the time of defendant's arrest.
 The trial court erred in overruling defendant's motion foracquittal made pursuant to criminal rule 29 at the end ofplaintiff's case as well as at the end of the trial.
 First Assignment of Error {¶ 7} In his first assignment of error, Kimmel maintains that the trial court erred in permitting the prosecution to enter evidence of his prior DUI conviction. During the trial, Trooper Cunningham testified that after asking if Kimmel would like him to send the tow truck to pull the minivan out of the ditch, he began to further talk with him. The trooper asked Kimmel "where he was coming from," to which Kimmel responded that he was not driving, but rather, his wife was. The trooper then ordered Kimmel to "stop lying" to him because he witnessed Kimmel exit the vehicle from the driver's side. Kimmel then stated, "I'm sorry, but I already have a prior DUI violation about a year and a half ago." Kimmel maintains that the court improperly allowed Trooper Cunningham to testify as to this statement despite his motion in limine, subsequent objection to this testimony, and request for a mistrial.
 {¶ 8} This Court's analysis of this issue begins by noting that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court[.]" Wightman v.Consolidated Rail Corp. (1999), 86 Ohio St.3d 431, 437, citingPeters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296,299; see, also, State v. Sage (1987), 31 Ohio St.3d 173, 182. Thus, this Court will not disturb the trial court's decision unless it is unreasonable, arbitrary, or capricious. In addition, this abuse of discretion must have materially prejudiced the defendant. State v. Lowe (1994), 69 Ohio St.3d 527, 532, citingState v. Maurer (1984), 15 Ohio St.3d 239, 265.
 {¶ 9} The Rules of Evidence state that "[a]ll relevant evidence is admissible, except as otherwise provided * * * by these rules[.]" Evid. R. 402. The term "relevant evidence" is also defined by the Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, Evid.R 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Furthermore, evidence that an accused has been convicted of a crime "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Evid.R. 404(B). However, the Rules of Evidence permit evidence of a prior conviction for impeachment purposes, but only evidence of crimes involving dishonesty or false statements or that are punishable by death or imprisonment in excess of one year are permitted for this reason. Evid.R. 609(A). In addition, evidence of other crimes is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, of absence of mistake or accident." Evid. R. 404(B).
 {¶ 10} In the case sub judice, the State did not seek to introduce evidence that Kimmel had a prior DUI conviction to prove his character in order to show that he acted in conformity therewith or to impeach his testimony at trial. Rather, this evidence was used to show Kimmel's knowledge and the absence of mistake or accident on his part in driving into the ditch and lying to the trooper about being the driver. Moreover, statements of a party offered against him at trial are admissible as admissions by a party-opponent pursuant to Evid.R. 801(D)(2) and 802. Therefore, the State's introduction of the statement that Kimmel, the defendant, made as to why he lied to the trooper about not being the driver were properly admitted as the admission of a party opponent. Accordingly, the trial court did not abuse its discretion in permitting this testimony at trial and in overruling Kimmel's motion for a new trial based on this argument. Thus, the first assignment of error is overruled.
 {¶ 11} Second Assignment of Error {¶ 12} In his second assignment of error, Kimmel asserts that the trial court erred in refusing to dismiss this matter upon learning that the State's sole witness, Trooper Cunningham, illegally intercepted, copied, and reviewed a conversation between Kimmel and his counsel while he was under arrest. The facts relevant to this assignment of error are as follows.
 {¶ 13} After arresting Kimmel for driving under the influence, Trooper Cunningham took Kimmel to the local patrol post for a breath test. Upon arriving at the post, Kimmel requested that he be permitted to speak with an attorney. The trooper complied with this request and showed Kimmel the telephone in the room where the machine for determining one's breath alcohol content was located. The phone was equipped with three lines. Two of these lines were recorded and one was not. While the room contained a sign close to the phone indicating that conversations in the room were subject to recordation, it did not specifically mention that phone conversations would be recorded nor did the trooper tell Kimmel this or further indicate which phone line was private.
 {¶ 14} During the hearing for a new trial, Trooper Cunningham testified that Kimmel remained on the phone for twenty to twenty-five minutes, which Kimmel later confirmed in his testimony. The trooper further testified that the length of Kimmel's phone call was unusual, which raised his suspicions that Kimmel was not actually talking to an attorney for that length of time, but rather was stalling in order for the maximum permissible time period for taking breath samples to expire. After finishing the attempted breath tests of Kimmel and charging him with violating R.C. 4511.19(A)(1), the trooper then asked the dispatcher if Kimmel's phone conversation had been recorded. Upon learning that the conversation was recorded, Trooper Cunningham listened to it and heard the conversation between Kimmel and his attorney, which lasted the entire length of time that Kimmel was on the phone contrary to the trooper's suspicions. The attorney that Kimmel was talking to on the night of his arrest testified at the hearing for a new trial that he had no idea that the conversation was being taped. Kimmel, likewise, testified that he had no such knowledge either.
 {¶ 15} The Ohio Supreme Court has held that "[i]mplicit within the meaning of Section 10, Article I [Ohio Constitution], and the analogous protections of Section 16, Article I, is the right of a criminal defendant to consult privately with his attorney." State v. Milligan (1988), 40 Ohio St.3d 341, 342. Thus, "[e]vidence obtained through the unauthorized interception of a private conversation between a criminal defendant and his attorney is subject to suppression pursuant to Section 10, Article I of the Ohio Constititution." Id. at paragraph two of the syllabus. Furthermore,
[w]here the unauthorized interception of a privateconversation between a criminal defendant and his attorneyresults in substantial prejudice to the defendant in thepreparation of his defense, the trial court may, in the exerciseof its sound discretion, take such action as is appropriate,including dismissal of the indictment.
Id. at paragraph three of the syllabus.
 {¶ 16} In the case sub judice, the undisputed evidence reveals that Trooper Cunningham clearly violated Kimmel's right to consult privately with his attorney by not only recording but subsequently listening to Kimmel's conversation with his attorney during Kimmel's arrest. However, the evidence further revealed that neither the prosecutor nor Kimmel and his trial counsel were aware of this violation until the jury began its deliberations. Furthermore, Trooper Cunningham did not testify during Kimmel's trial as to the substance of this conversation, and at no point did the State seek to introduce any type of evidence regarding this conversation. The only evidence presented at trial concerning Kimmel's communication with an attorney was simply that he requested to be permitted to call an attorney and that he was permitted to do so. Thus, the trial court was not required to suppress any evidence of this conversation as none was offered. Moreover, the trooper's determination that Kimmel was driving while intoxicated and his decision to cite Kimmel for this was made prior to the illegal interception of this communication and played no part in Kimmel's prosecution.
 {¶ 17} Lastly, Kimmel was not substantially prejudiced in the preparation of his defense nor was the prosecution given the "upper-hand" so as to warrant a dismissal of this matter. In determining what remedy is appropriate for violating a criminal defendant's right to private communications with his attorney, the Ohio Supreme Court has adopted the case-by-case balancing approach of the United States Supreme Court in Weatherford v.Bursey (1977), 429 U.S. 545. See Milligan,40 Ohio St.3d at 344. The factors to consider in determining the appropriate remedy are:
(1) whether the government deliberately intruded in order toobtain confidential and privileged information, (2) whether thegovernment obtained directly or indirectly any evidence which wasor could be used at trial as a result of the intrusion, (3)whether any information obtained was or could be used in anymanner detrimental to the defendant, and (4) whether detailsabout trial preparation were learned by the government.
Id., citing Weatherford, 429 U.S. at 554 and 558.
 {¶ 18} Here, the evidence revealed that the two recorded lines were used for various reasons, including in case the post received a harassing call or an emergency call that was cut off for some reason so that the troopers could review the call for emergency purposes, etc. In addition, Trooper Cunningham testified that he did not pay attention to which line he gave Kimmel and that he did not know whether the call was recorded until he asked the dispatcher. Thus, the trial court concluded that the recording was not a deliberate intrusion. Further, the evidence demonstrated that the prosecution did not use this conversation in any manner during the trial as it was unaware of the situation until jury deliberations. In addition, this lack of knowledge on the part of the prosecutor indicated that details about the defense's trial preparation were not learned by the prosecution prior to Kimmel's conviction. Therefore, the State met its burden in demonstrating that the information gained, although illegally obtained, was not prejudicial to Kimmel. SeeMilligan, 40 Ohio st.3d at 345. Thus, the trial court did not err in refusing to dismiss this matter and in denying Kimmel's motion for a new trial based on this argument. Therefore, the second assignment of error is overruled.
 Third Assignment of Error {¶ 19} Kimmel next maintains that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29(A). Criminal Rule 29(A) states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense[.]" Accordingly, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus; see, also, Statev. Boddie, 3rd Dist. No. 1-2000-72, 2001-Ohio-2261, 2001 WL 1023107. However, as this Court has previously held, theBridgeman standard "must be viewed in light of the sufficiency of evidence test[.]" State v. Foster (Sept. 17, 1997), 3rd
Dist. No. 13-97-09, 1997 WL 576353, citing State v. Jenks
(1991), 61 Ohio St.3d 259. In Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt.
 Jenks, 61 Ohio St.3d at paragraph two of the syllabus.
 {¶ 20} Kimmel was charged with violating R.C. 4511.19(A)(1). This section prohibits a person from operating any vehicle * * * if, at the time of the operation, any of the following apply: (1) The person is under the influence of alcohol[.]" R.C.4511.19(A)(1). Thus, the State had to prove beyond a reasonable doubt that Kimmel was operating a vehicle while under the influence of alcohol. In order to satisfy this burden, the State presented the following evidence.
 {¶ 21} Trooper Cunningham testified that he witnessed a minivan back into a ditch and that he witnessed Kimmel exit the vehicle from the driver's side. In addition, Kimmel told the trooper that he was not driving the van but then admitted to lying about being the driver because he already had a prior DUI conviction. Kimmel also admitted to having consumed a couple of beers that night. Trooper Cunningham further testified that he smelled a strong odor of alcoholic beverage on Kimmel's person, that Kimmel's eyes were bloodshot and glassy, and that his speech was slurred. The trooper then had Kimmel take three field sobriety tests, all of which he explained how they operated to the jury.[1]
 {¶ 22} On the Horizontal Gaze Nystagmus ("HGN"), the trooper witnessed all six clues of intoxication, resulting in Kimmel's failure of the HGN. The trooper further testified that on the one-legged-stand test, Kimmel swayed while balancing before the count began, raised his arms more than six inches above his pants leg, repeatedly put his foot down during the count on numbers 2, 3, 5, 12, 16, 20, and 22, and stopped taking the test on count 22 despite being instructed that the test was to end at count 30, to stand still during the instructions, and not to raise his hands more than six inches from his pant legs. Furthermore, on the walk-and-turn test, Kimmel moved his feet for balance while the trooper was giving him instructions on how to take the test, started the test twice before the trooper could complete the instructions, did not touch heel to toe on steps 2, 3, and 6 of a total of nine steps while going one way, and did not do this on step 4 coming back. Kimmel also raised his hands more than six inches above his pants leg, did not walk straight, incorrectly turned to the right rather than the left, took only eight steps on the way back, and counted from one to nine both ways instead of one to nine then nine to one as instructed. Based on all of this, the trooper placed Kimmel under arrest and took him to the patrol post to administer a breath test.
 {¶ 23} Trooper Cunningham testified that although Kimmel agreed to take the breath test, he repeatedly failed to actually breathe into the machine. The trooper further testified that the machine was functioning properly and that he checked to ensure that the tube that Kimmel was "breathing" into was not obstructed in any way. Thus, the trooper concluded that Kimmel was manipulating the machine, and he decided to mark down that Kimmel had refused to take the test. Although Kimmel presented the testimony of six witnesses, including himself, that he had only consumed two beers that night and that his driving was not impaired, the trial court had ample evidence to conclude that the evidence was such that reasonable minds could reach different conclusions as to whether each material element of the crime was proven beyond a reasonable doubt. Accordingly, the trial court did not err in overruling Kimmel's motion for acquittal, and the third assignment of error is overruled.
 {¶ 24} For these reasons, the judgment of the Marion Municipal Court is affirmed.
Judgment affirmed.
Bryant and Cupp, J.J., concur.
[1] Neither party disputed that all three field sobriety tests were performed in compliance with the National Highway Traffic Safety Administration's standards.