OPINION
{¶ 1} Appellant, Shawn Hall, appeals from the trial court's entry of judgment on a jury verdict convicting him of murder, R.C. 2903.02(B), with kidnapping as the underlying felony offense of violence; murder, R.C. 2903.02(B), with felonious assault as the underlying felony offense of violence; kidnapping, R.C. 2905.01(A)(3); and felonious assault, R.C.2903.11(A)(1). Appellant also appeals from the trial court's judgment entry of sentence. We affirm.
 {¶ 2} In late June 2001, James Beres ("Beres") and Thomas Hogya ("Hogya") approached Brandon Kaseda ("Kaseda") to purchase $20 of crack cocaine. Kaseda gave Beres the drugs; Beres gave appellant a $1 bill and drove off.
 {¶ 3} Appellant, a friend of Kaseda's, learned of this incident. Rhonda Head-LaForce ("Head") drove appellant to Prospect Street in Painesville, Ohio so that he could speak to Kaseda about the incident. Head and appellant then went to the home of Laveda Lyons ("Lyons") where Head and appellant picked up Isaiah Johnson, III ("Johnson") and Shawn Fisher ("Fisher"). This group went to the home of Crystal Giddings ("Giddings") because they believed Beres was there.
 {¶ 4} When the group arrived at Giddings house, Giddings told appellant that Beres was not there. As appellant and the others returned to Head's van, they saw Hogya. Appellant attacked Hogya with a baton-like object. Hogya escaped on foot.
 {¶ 5} As the group again prepared to leave they spotted Beres in Gidding's house. Appellant went back to the house and called for Beres who came out of hiding. Appellant forced Beres into Head's van and the group drove back to Prospect Street and found Kaseda. Appellant told Kaseda that he had a present for him and Kaseda got into the van.
 {¶ 6} While in the van, Kaseda and appellant argued with Beres about the money Beres owed Kaseda. Kaseda punched Beres in the face several times. This caused Beres to bleed from his nose or from around his eyes. Head drove the van down a dirt road and ordered everyone out of the van.
 {¶ 7} Once outside the van, the group attacked Beres, punching and kicking him. Beres fell to the ground. Appellant and Kaseda continued to attack Beres, stomping on his face and chest. The attack lasted several minutes. The group piled back into the van and drove off, leaving Beres, bleeding, apparently unconscious, and making a snoring sound, lying in the road.
 {¶ 8} Head then drove to Lyon's house. Fisher left and went to a bar to try to obtain money to repay a debt owed to appellant. Appellant and Head then returned to Head's house. While there, appellant told Ken LaForce, Head's fiancé, that he had hit Beres and that Beres was snoring when the group left the scene. LaForce told appellant that the sound he heard was probably Beres choking on his own blood. Appellant and Head then left to check on Beres' condition. Appellant determined that Beres was dead.
 {¶ 9} Appellant and Head then picked up Fisher, Johnson, and Kaseda. This group went to the apartment of Ali Brown ("Brown"), Kaseda's girlfriend. Head left Brown's apartment and went home alone. Brown gave appellant a blanket and the group borrowed Brown's car, retrieved Beres' body, and dropped the body in a wooded area of University Circle in Cleveland
 {¶ 10} On June 29, 2001, an off-duty Cleveland detective discovered Beres' body. An autopsy determined that the cause of death was blunt impact to the chest with multiple rib fractures and soft tissue hemorrhage, atherosclerotic cardiovascular disease, and acute cocaine intoxication. The coroner ruled the death a homicide.
 {¶ 11} Appellant was subsequently indicted on eight counts: (1) aggravated murder in violation of R.C. 2903.01(B) with kidnapping as the underlying offense; (2) aggravated murder in violation of R.C. 2903.01(B) with robbery as the underlying felony offense; (3) murder in violation of R.C. 2903.02(B) with kidnapping as the underlying felony offense of violence; (4) murder in violation of R.C. 2903.02(B), with robbery as the underlying felony offense of violence; (5) murder in violation of R.C.2903.02(B), with felonious assault as the underlying felony of violence; (6) kidnapping in violation of R.C. 2905.01(A)(3); (7) robbery in violation of R.C. 2911.02(A)(2); and (8) felonious assault in violation of R.C. 2903.11(A)(1). Appellant entered a not guilty plea.
 {¶ 12} The matter proceeded to a jury trial. The jury acquitted appellant of aggravated murder but convicted him of murder pursuant R.C.2903.02(B), with kidnapping as the underlying felony offense of violence; murder pursuant to R.C. 2903.02(B), with felonious assault as the underlying felony offense of violence; kidnapping, R.C. 2905.01(A)(3); and felonious assault, R.C. 2903.11(A)(1).
 {¶ 13} On November 2, 2001, the trial court sentenced appellant to a mandatory prison term of 15 years to life on count 5. Counts 3 and 8 merged with count 5 for purposes of sentencing. The trial court sentenced appellant to nine years on count 6, with this sentence to be served consecutively to the sentence for murder. Thus, appellant received an aggregate sentence of twenty-four years to life. Appellant was also ordered to pay court costs.
 {¶ 14} Appellant appeals from the trial court's judgments raising five assignments of error:
 {¶ 15} "[1.] The evidence presented at trial was insufficient to sustain a conviction for murder.
 {¶ 16} "[2.] The court erred in allowing Clyde Baer to testify concerning a document that the [appellant] purportedly created in preparation for trial.
 {¶ 17} "[3.] The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 18} "[4.] Appellant's convictions for murder are against the manifest weight of the evidence.
 {¶ 19} "[5.] The trial court committed reversible error by assessing court costs against the appellant when the record revealed that the appellant was indigent."
 {¶ 20} In his first assignment of error appellant argues that there was insufficient evidence to support his convictions for murder. We disagree.
 {¶ 21} When presented with a sufficiency argument we view the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found all of the elements of the offense beyond a reasonable doubt. State v. Furman, 11th Dist. No. 2001-L-213, 2003-Ohio-2100, at ¶ 48, citing State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4-5.
 {¶ 22} Appellant was convicted of two counts of murder pursuant to R.C. 2903.02(B), which provides that, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 {¶ 23} Appellant contends that the state failed to present sufficient evidence to establish the cause of Beres' death and thus, failed to present sufficient evidence to establish that Beres died as the proximate result of appellant's conduct. Appellant argues that Dr. Challener, the chief deputy coroner of Cuyahoga County, determined that Beres suffered from cardiovascular disease and cocaine intoxication, and that either of these conditions would have been sufficient to cause Beres' death. Appellant also asserts that Dr. Challener concluded that a person of Beres' age would not die from four broken ribs. A review of the record shows that appellant misconstrues Dr. Challener's testimony.
 {¶ 24} Dr. Challener testified that the cause of Beres' death was "* * * blunt impact to the chest with multiple rib fractures and soft tissue hemorrhage." Dr. Challener then testified that atherosclerotic cardiovascular disease and acute cocaine intoxication were conditions that contributed to and were part of the cause of death. In response to a question from the trial court, Dr. Challener stated that it was his opinion to a reasonable degree of medical certainty that "* * * the rib fractures [were] part of the cause of death." Thus, viewed in the light most favorable to the prosecution, the state presented sufficient evidence from which a reasonable juror could have found that Beres' died as a proximate result of appellant's conduct, to wit: kidnapping and felonious assault. Appellant's first assignment of error is without merit.
 {¶ 25} In his second assignment of error appellant argues that the trial court erred when it permitted Clyde Baer to testify about documents created by appellant and his conversations with appellant. We disagree.
 {¶ 26} Clyde Baer ("Baer") was a federal prisoner being housed in the same facility as appellant. An inmate introduced appellant to Baer. Appellant asked Baer to review two letters appellant had prepared, apparently at the instruction of his trial counsel. These documents detailed appellant's involvement in Beres' death.
 {¶ 27} Baer kept a copy of the documents prepared by appellant and turned these documents over to the United States Attorney's office. The United States Attorney's office then forwarded the documents in a sealed envelope to the trial court. The trial court held a hearing on the admissibility of the documents and Clyde Baer's testimony regarding his conversations with appellant. The trial court held that the documents and testimony were admissible. Appellant contends that the admission of this evidence violated his right to counsel. See, State v. Milligan (1988),40 Ohio St.3d 341, at paragraph two of the syllabus, stating: "Evidence obtained through the unauthorized interception of a private conversation between a criminal defendant and his attorney is subject to suppression pursuant to Section 10, Article I of the Ohio Constitution."
 {¶ 28} The Milligan court applied the following test to determine whether the defendant's right to counsel had been violated:
 {¶ 29} "(1) whether the government deliberately intruded in order to obtain confidential and privileged information, (2) whether the government obtained directly or indirectly any evidence which was or could be used at trial as a result of the intrusion, (3) whether any information obtained was or could be used in any manner detrimental to the defendant, and (4) whether details about trial preparation were learned by the government." Id., at 344, citing Weatherford v. Bursey
(1977), 429 U.S. 545, 554.
 {¶ 30} Explicit in the Milligan test is a requirement that the government deliberately intrude to obtain privileged information. Baer testified at the evidentiary hearing that he was not approached by any representative of the state to obtain information from appellant. While Baer had entered into a plea agreement that required him to provide information to the United States Attorney's office on any crimes of which he had knowledge, this does not rise to the level of state action. See, generally, United States v. Jacobsen (1984), 466 U.S. 109.
 {¶ 31} Appellant also waived any claim that the documents were protected by the attorney-client privilege when he gave them to Baer. InState v. Post (1987), 32 Ohio St.3d 380, 386, the Ohio Supreme Court held "that a client's disclosure to a third party of communications made pursuant to the attorney-client privilege breaches the confidentiality underlying the privilege, and constitutes a waiver thereof." Here, appellant approached Baer to review the documents and discussed his version of the events with Baer. Thus, appellant voluntarily waived any claim that the communications were protected by the attorney-client privilege. As such, the trial court did not err in admitting Baer's testimony or the documents obtained by Baer.
 {¶ 32} In his third assignment of error appellant argues that he was denied effective assistance of counsel. He presents three issues for our review under this assignment of error.
 {¶ 33} When we review an ineffective assistance claim, the benchmark is "[w]hether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington (1984), 466 U.S. 668,686. To prevail on a claim of ineffective assistance, appellant must show his counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment." Id. at 687. Appellant must also show prejudice resulting from the deficient performance. Id. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Appellant must show "* * * that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. We presume that counsel's conduct was within the wide range of reasonable professional assistance. Id. See, also, State v. Bradley (1989),42 Ohio St.3d 136, 143.
 {¶ 34} We need not address the two prongs of appellant's ineffective assistance claim in the order set forth in Strickland.
 {¶ 35} "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, supra at 697.
 {¶ 36} Appellant first contends that his trial counsel was ineffective because he failed to adequately prepare for a hearing on the admissibility of Clyde Baer's testimony and the documents Baer had provided to the United States Attorney. As we discussed in our analysis of appellant's second assignment of error, the trial court properly determined that this evidence was admissible. Therefore, even assuming appellant's counsel's performance was deficient, appellant cannot demonstrate prejudice.
 {¶ 37} Appellant also argues that his trial counsel was ineffective when he advised appellant to write down his version of the events. Appellant argues that such statements were easily subject to seizure by other prisoners or corrections officers. A review of the record makes clear that appellant voluntarily waived the privilege that had attached to these documents. Therefore, he cannot now be heard to complain that his trial counsel was ineffective for advising him to draft the documents.
 {¶ 38} Appellant next argues that he received ineffective assistance of counsel when his attorney failed to move to strike Jack Marcinko, Francis Sheiber, and Patrick Ferritto from the jury for cause, or to exercise his peremptory challenges on these jurors. We find no error.
 {¶ 39} Appellant argues that his counsel should have challenged or excused Marcinko because the trial judge had once represented Marcinko. We first note that neither the Revised Code nor the Rules of Criminal Procedure expressly provide that such a relationship is grounds to excuse a juror for cause. See, R.C. 2313.42; 2945.25; Crim.R. 24. Further, the record contains no evidence that this relationship caused Mr. Marcinko to be biased against appellant.
 {¶ 40} Appellant argues that his counsel should have challenged or excused Sheiber because her sister-in-law was fatally ill. Sheiber indicated that this made it difficult for her to concentrate; however, there is no evidence that this resulted in prejudice to appellant.
 {¶ 41} Appellant next argues that his trial counsel should have challenged or excused Ferritto. Ferritto stated during voir dire that he was worried about losing his job; that he was a sponsor for a drug and alcohol program at his employment; and that his cousin had died as a result of a cocaine overdose. Ferritto also stated unequivocally and on several occasions that his beliefs would prevent him from doing his duty as a juror and that he would have a prejudicial attitude towards both sides.
 {¶ 42} A trial court has the discretion to disqualify a juror. Statev. Midwest Pride IV, Inc. (1998), 131 Ohio App.3d 1, 19, citing Berk v.Matthews (1990), 53 Ohio St.3d 161, 168. We are not free to substitute our judgment for that of the trial court. Id., at 20. Only the trial court has the opportunity to observe a prospective juror's demeanor and evaluate first hand the sincerity of a juror's response to questions. (Internal quotations and citations omitted.) Id.
 {¶ 43} In the instant case defense counsel closed voir dire by asking questions such as, "If you were sitting in Mr. Hall's position, would you feel comfortable with yourself as a juror?" and "* * * if the State does not convince you beyond a reasonable doubt of Mr. Hall's guilt on the respective charges, does everyone here feel like they can vote not guilty?" No juror provided a response to these questions that would have given rise to a reason to excuse the juror for cause.
 {¶ 44} Neither the state nor the defense moved to excuse a juror for cause. The trial court also specifically stated at the conclusion of voir dire that there was no grounds to excuse a juror for cause. Therefore, we will not substitute our judgment for that of the trial court's.
 {¶ 45} Further, because appellant is unable to show prejudice, i.e., a reasonable probability that another juror would have decided the case differently, his argument is without merit.
 {¶ 46} Finally, under this assignment of error, appellant argues that his trial counsel was ineffective because he failed to present a defense to the kidnapping charge. We disagree.
 {¶ 47} Appellant fails to specify what defense his counsel could have presented to the kidnapping charge. Therefore, we are unable to say that he received ineffective assistance of counsel. Appellant's third assignment of error is without merit.
 {¶ 48} In his fourth assignment of error appellant contends that his convictions for murder are against the manifest weight of the evidence. We may find that a verdict is against the manifest weight of the evidence even though legally sufficient evidence supports it. State v. Group,
2002-Ohio-7247, at ¶ 76, 98 Ohio St.3d 248. When we consider a manifest weight argument, we review the entire record, weigh the evidence and reasonable inferences, and consider the credibility of witnesses. Id. at ¶ 77. We then determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Id. We should only exercise this discretionary power in those exceptional cases where the evidence weighs heavily against conviction. Id. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 49} As in his first assignment of error, appellant premises his argument on his construction of Dr. Challener's testimony. Appellant argues that Dr. Challener could not determine the actual cause of death. Appellant argues that Dr. Challener never concluded that Beres' died as a proximate result of the injuries inflicted upon him, but did conclude that he died from either a heart condition or acute cocaine intoxication.
 {¶ 50} As we discussed in appellant's first assignment of error, Dr. Challener clearly determined that Beres died because of the rib fractures and that Beres' heart disease and cocaine intoxication were conditions that contributed to his death. Thus, after a thorough review of the record, we cannot say that the jury's verdict was against the manifest weight of the evidence. Appellant's fourth assignment of error is without merit.
 {¶ 51} In his fifth assignment of error appellant contends that a trial court may not impose costs on an indigent defendant. We disagree.
 {¶ 52} Former R.C. 2947.23 stated:
 {¶ 53} "In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs. If a jury has been sworn at the trial of a case, the fees of the jurors shall be included in the costs, which shall be paid to the public treasury from which the jurors were paid."
 {¶ 54} Appellant contends that R.C. 2949.14 prohibits a court from imposing costs on an indigent defendant. This section provides:
 {¶ 55} "Upon conviction of a nonindigent person for a felony, the clerk of the court of common pleas shall make and certify under his hand and seal of the court, a complete itemized bill of the costs made in such prosecution, including the sum paid by the board of county commissioners, certified by the county auditor, for the arrest and return of the person on the requisition of the governor, or on the request of the governor to the president of the United States, or on the return of the fugitive by a designated agent pursuant to a waiver of extradition except in cases of parole violation. Such bill of costs shall be presented by such clerk to the prosecuting attorney, who shall examine each item therein charged and certify to it if correct and legal. Upon certification by the prosecuting attorney, the clerk shall attempt to collect the costs from the person convicted." (Emphasis added.)
 {¶ 56} In State v. Peacock, 11th Dist. No. 2002-L-015, 2003-Ohio-6772, at ¶ 49-50, we adopted the reasoning of the Fifth District Court of Appeals, which held:
 {¶ 57} "R.C. 2949.14 does not govern the court's ability to order costs. The statute is directed at the ability of the clerk of courts to collect the costs from the person convicted. While R.C. 2949.14 provides a collection mechanism only for non-indigent defendants, nothing in R.C.2947.23 prohibits the court from assessing costs to an indigent defendant as part of the sentence. In the event the indigent defendant at some point ceases to be indigent, the clerk could then collect costs pursuant to the procedure outlined in R.C. 2949.14. Ohio law does not prohibit a judge from including costs as part of the sentence of an indigent defendant." See, State v. White, 5th Dist. No. 02CA23, 2003-Ohio-2289, ¶ 9. See, also, State v. Roux, 154 Ohio App.3d 296, 2003-Ohio-4876; Statev. Glavic, 11th Dist. Nos. 2001-L-177 and 2001-L-179, 2003-Ohio-6961, ¶ 46-53.
 {¶ 58} Appellant's fifth assignment of error is without merit.
 {¶ 59} For the foregoing reasons the judgment of the Lake County Common Pleas Court is affirmed.
Grendell, J., concurs, O'Neill, J., dissents with Dissenting Opinion.