[Cite as *State v. Black*, 2016-Ohio-7901.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NOS.   26986 and 26991 |
| | : | |
| v. | : | T.C. NOS.   15CRB6924 and |
| | : | 15TRD10946 |
| DION BLACK | : | |
| | : | (Criminal appeal from |
| Defendant-Appellant | : |  Municipal Court) |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___23rd___ day of _____November_____, 2016.

. . . . . . . . . . .

MATTHEW O. KORTJOHN, Atty. Reg. No. 0083743, Assistant City Prosecutor, 335 W. Third Street, Rm. 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

KIRIAKOS G. KORDALIS, Atty. Reg. No. 0089697, 130 W. Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant Dion Black appeals his conviction and sentence in Case No. 15 CRB 6924 for one count of failure to comply, in violation of R.C. 2921.331(B), a misdemeanor of the first degree and one count of obstructing official business, in violation of R.C. 2921.21(A), a misdemeanor of the second degree.   Black appeals his conviction

and sentence in Case No. 15 TRD 10946 for one count of no operator's license, in violation of R.C. 4510.12(A), a misdemeanor of the first degree; and one count of failure to stop prior to driving on a sidewalk, in violation of R.C. 4511.431, a minor misdemeanor. Black filed a timely notice of appeal with this Court on January 14, 2016, in Case Nos. 15 CRB 6924 and 15 TRD 10946.

{¶ 2} On August 26, 2015, Montgomery County Sheriff's Deputy Brian Shiverdecker was patrolling in the vicinity of 4567 Germantown Pike. Deputy Shiverdecker was wearing the uniform of the day and driving a marked police cruiser. On that day, Deputy Shiverdecker was working as a member of the "C.O.P. Unit," a specialized road patrol unit focused on narcotics complaints. At approximately 1:00 p.m., Deputy Shiverdecker observed a gold-colored Chevrolet Suburban fail to stop before exiting onto the roadway from Whitney Young Estate Apartments located on Liscum Drive. After following the Suburban for a short distance, Deputy Shiverdecker activated his overhead cruiser light in order to effectuate a stop of the vehicle. Deputy Shiverdecker testified that he did not activate his cruiser's siren during the attempted stop of the vehicle.

{¶ 3} At this point, Deputy Shiverdecker observed the driver of the Suburban drive the vehicle through the parking lot of a nearby convenience store, stop the vehicle briefly, and then pull out onto Germantown Street. Deputy Shiverdecker testified that he could not see the driver of the vehicle during the attempted stop, and the driver never pulled over. Rather, the driver of the Suburban drove south on Germantown Street at a high rate of speed. Deputy Shiverdecker testified that he radioed his partner, Deputy Herbert Thornton, who was only a short distance away in order to alert him that the driver of the

Suburban was fleeing in his direction. At the time he received the alert from Deputy Shiverdecker, Deputy Thornton was close enough to observe the Suburban pull onto Germantown Street and begin driving in his direction.

{¶ 4} Deputy Thornton testified that he brought his cruiser to a complete stop so that he could better observe the driver of the Suburban as it passed his cruiser. As the Suburban passed him, Deputy Thornton identified Black as the driver of the vehicle. Deputy Thornton testified that he was able to observe Black driving the vehicle through the front windshield and driver's side window as the Suburban passed him. Deputy Thornton also testified that there was another individual sitting in the front passenger seat of the vehicle. Deputy Thornton further testified that windows on the Suburban were not tinted, thereby allowing him to easily see into the vehicle.

{¶ 5} After Black passed him, Deputy Thornton activated his overhead lights and began following the vehicle. Deputy Thornton testified that he observed Black turn onto Belcourt Street and bring the Suburban to a complete stop. At that point, Black and the unidentified passenger exited the vehicle and fled in different directions. Rather than chase after Black or the passenger, Deputy Thornton investigated the Suburban in order to ascertain whether there was anyone else in the vehicle. When he failed to locate any other passengers, Deputy Thornton testified that he began taking an inventory search of the interior of the vehicle. During his search, Deputy Thornton discovered a State of Ohio birth certificate with the name "Dion Eugene Black," date of birth of June, 1981, lying on the driver's side dashboard inside the Suburban.

{¶ 6} Deputy Thornton testified that he ran the information from the birth certificate through Justiceweb in the computer in his police cruiser. Justiceweb is a website that

lists dates of arrest, police stops, and various other court case information including booking photos for recent arrests. After looking at one of Black's recent mugshots, Deputy Thornton realized that it was the same individual he had just observed as being the driver of the Suburban. Neither Black nor his passenger in the Suburban were apprehended that day.

{¶ 7} Thereafter, on October 14, 2015, Black was charged by complaint in Case No. 15 CRB 6924 with one count of failure to comply and one count of obstructing official business. On October 22, 2015, Black was issued a citation in Case No. 15 TRD 10946 for one count of no operator's license and one count of failure to stop prior to driving on a sidewalk. Black failed to appear for his arraignment on October 26, 2015, and the trial court issued a warrant for his arrest. Black was subsequently arrested on November 20, 2015, and held in jail until December 1, 2015, when he was released on his own recognizance.

{¶ 8} After a bench trial held on December 9, 2015, the trial court found Black guilty on all counts in Case Nos. 15 CRB 6924 and 15 TRD 10946. Black was taken into custody and held without bond while the trial court referred the matter to adult probation for a pre-sentence investigation report (PSI). On December 22, 2015, Black was sentenced in Case No. 15 CRB 6924 to 180 days in jail for failure to comply, with 120 days suspended. Black also received credit for twenty-seven days already served for an aggregate sentence of thirty-three days in jail. The trial court imposed a $25.00 fine plus court costs. The trial court merged the obstructing official business charge with the failure to comply for the purposes of sentencing. In Case No. 15 TRD 10946, Black was sentenced to 180 days in jail, with twenty-seven days credit for time served, while

suspending the balance of the sentence, and ordering him to pay a $100.00 fine plus court costs. Since the filing of the instant appeal, Black has served his entire thirty-three day jail sentence; however, his fines and court costs balance in the amount of $300.30 remains unpaid.

{¶ 9} It is from this judgment that Black now appeals.

{¶ 10} Black's first assignment of error is as follows:

{¶ 11} "THE STATE FAILED TO PRESENT RELIABLE EVIDENCE ON THE ISSUE OF IDENTIFICATION TO MEET THEIR BURDEN THAT THE DEFENDANT COMMITTED THE CRIMES HE IS ACCUSED OF IN CASE NUMBERS 2015 CRB 6924 AND 2015 TRD 10946."

{¶ 12} In his first assignment, Black contends that the State failed to present sufficient evidence identifying him as the driver of the Suburban that fled from Deputies Shiverdecker and Thornton on the afternoon of August 26, 2015. Specifically, Black argues that Deputy Thornton's testimony identifying him as the driver of the Suburban was not credible due to the circumstances surrounding his opportunity and ability to observe Black during the attempted stop of the vehicle. In our view, it is unclear from his brief whether Black is challenging the sufficiency of the evidence or arguing that his convictions are against the manifest weight of the evidence.

{¶ 13} A sufficiency-of-the-evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Under a sufficiency analysis, an appellate court does not make any determinations regarding the credibility of witnesses. *State v. Goff,* 82 Ohio

St.3d 123, 139, 694 N.E.2d 916 (1998), citing *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 14} A weight-of-the-evidence argument "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *see Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} The credibility of the witnesses and the weight to be given to their testimony

are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 16} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 17} "Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. * * * Like any fact, the state can prove the identity of the accused by 'circumstantial or direct' evidence." *State v. Tate,* 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15. In the instant case, the State provided the testimony of Deputy Thornton, who provided the following testimony pertinent to the issue of his identification of Black as the driver of the Suburban:

> The State: When did you first notice them?
>
> Deputy Thornton: Whenever [Deputy Shiverdecker] called the stop out, I looked up Germantown. Which is maybe, a hundred, a hundred and fifty yard[s] away from where I'm at. I observed the [Suburban] turn into the lot and then immediately come right back out to Germantown Street.

Q: Ok. So, when you're observing all that, have you already pulled out onto Germantown?

A: Yes, I'm already starting to pull out onto Germantown to head towards his location.

Q: Ok. And, just, while we're still down here, tell me what happens next.

A: I observed the vehicle pull out of the lot onto Germantown. Right towards me. As the vehicle gets closer, I come to stop on Germantown Street and the vehicle drives right past me.

Q: *Ok. So, you actually – why did you stop your cruiser?*

A: *He's coming at me. I know he had just left or fled the stop there from Deputy Shiverdecker. I stopped on Route 4. That was, there, I can try and see how many occupants. Whether they're male or female, inside the vehicle. And primarily, to try and identify the driver.*

Q: Ok. So, how does stopping your vehicle – how does it aid you in doing that?

A: *Whenever I come to a complete stop, that way there you can observe everything. You don't have to worry about traffic coming, going.*
***

Q: Ok. How does the Suburban – were you able – the Suburban did end up passing you, at some point?

A: Correct.

Q: Does the Suburban sit up higher from you?

A: Yes, it sits up high.

Q: *Ok. And, from the vantage point that you had, were you able to see who was driving that vehicle?*

A: *I did.*

\*\*\*

Q: Alright. Is that person sitting in the courtroom today?

A: He is.

Q: And, can you indicate where the person is sitting for the record?

A: He's sitting at the defense table, wearing a blue – light blue t-shirt.

The State: Ok. Your Honor, I'm going to ask that the record reflect that Deputy Thornton has identified [Black].

The Court: So noted.

The State: And, as you – as the vehicle pass[es] you, what do you do next?

Deputy Thornton: *As it passes me, I start focusing on the driver, so I can get a good facial shot of who was driving the vehicle. As the vehicle comes by me, the driver looks right down – right at me, as he goes by. Once he goes by, I do – I flip my vehicle around and attempt to follow him.*

**{¶ 18}** Here, the State provided the testimony of Deputy Thornton, who unequivocally testified that he observed Black driving the Suburban. Deputy Thornton testified that he saw Black driving by looking at him through the side driver's window as the Suburban passed. The windows of the Suburban were not tinted and nothing obstructed Deputy Thornton's view of Black as he passed. Moreover, Deputy Thornton's

identification of Black was made in the early afternoon in full daylight. Once the Suburban stopped and Black and his passenger fled on foot, Deputy Thornton was able to identify Black as the driver by searching the computer system for his mugshot, as provided by his birth certificate found in the vehicle.

{¶ 19} We also note that the State presented the testimony of Dayton Police Officer Theodore Trupp who had encountered Black driving the same gold-colored Suburban shortly before the events occurred in the instant case. Specifically, Officer Trupp testified that he stopped Black approximately four and a half months earlier driving the same vehicle when he issued him a citation for not having a driver's license. This evidence, in conjunction with Deputy Thornton's identification, provided substantial evidence that Black was the driver during the pursuit in the instant case. *State v. Quarles*, 2d Dist. Clark No. 2014 CA 72, 2015-Ohio-3050, ¶ 24.

{¶ 20} Thus, having reviewed the record, we find no merit in Black's manifest-weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton,* 2d Dist. Miami No. 2010–CA–27, 2012–Ohio–4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here the trial court quite reasonably could have credited Deputy Thornton's testimony identifying Black as the driver of the Suburban on the day of the attempted stop. Accordingly, the trial court did not lose its way and create a manifest miscarriage of justice in reaching guilty verdicts for the charged offenses nor is the evidence of identification insufficient to sustain Black's convictions.

{¶ 21} Black's first assignment of error is overruled.

{¶ 22} Black's second and final assignment of error is as follows:

{¶ 23} "MR. BLACK WAS NOT GIVEN REASONABLE ASSISTANCE FROM HIS COUNSEL DURING HIS PENDING CASE BECAUSE HIS COUNSEL FAILED TO FILE A MOTION TO SUPPRESS EVIDENCE WITH REGARDS TO IDENTIFICATION."

{¶ 24} In his final assignment, Black argues that his trial counsel was ineffective for failing to file a motion to suppress the testimony of Deputy Thornton identifying him as the driver of the Suburban.

{¶ 25} "To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different." *State v. Veal,* 2d Dist. Montgomery No. 25253, 2013–Ohio–1577, ¶ 7, citing *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by the Supreme Court of Ohio in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Id.*

{¶ 26} "[T]he failure to file a motion to suppress does not necessarily constitute ineffective assistance of counsel." *State v. Layne,* 12th Dist. Clermont No. CA2009–07–043, 2010–Ohio–2308, ¶ 46, citing *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). It is only considered ineffective assistance of counsel when the record demonstrates that the motion to suppress would have been successful if made. *State v. Resendiz,* 12th Dist. Preble No. CA2009–04–012, 2009–Ohio–6177, ¶ 29, citing *State v. Brown,* 12th Dist. Warren No. CA2002–03–026, 2002–Ohio–5455, ¶ 11. The court in *Resendiz* presumed that trial counsel was effective if he could have reasonably

decided that filing a suppression motion would be a futile act, even if there is some evidence in the record to support a motion. *Resendiz* at ¶ 29. *See also State v. Conkright,* 6th Dist. Lucas No. L–06–1107, 2007–Ohio–5315, ¶ 50.

{¶ 27} "The Sixth Amendment does not require counsel to pursue a motion to suppress in every case." *State v. Bell,* 11th Dist. Lake No. 2015–L–017, 2015–Ohio–4775, ¶ 48, citing *State v. Jefferson,* 9th Dist. Summit No. 20156, 2001 WL 276343 (Mar. 21, 2001). "However, the failure to file a motion to suppress can constitute ineffective assistance of counsel if the motion implicates matters critical to the defense and if the failure results in prejudice." *Id.*

{¶ 28} "Where the basis of an ineffective assistance of counsel claim is counsel's failure to file a motion to suppress evidence, the defendant making that claim must prove that the basis of the suggested suppression claim is meritorious." *In re D.D.,* 2d Dist. Montgomery No. 22740, 2009–Ohio–808, ¶ 3, citing *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *State v. Pillow,* 2d Dist. Greene No. 07CA95, 2008–Ohio–6046.

{¶ 29} In the instant case, Black argues that he received ineffective assistance when his trial counsel failed to file a motion to suppress the identification testimony of Deputy Thornton. "Due process may require a court to suppress eyewitness testimony when the identification results from an unduly suggestive identification procedure." *State v. Adams,* 144 Ohio St.3d 429, 2015–Ohio–3954, 45 N.E.3d 127, ¶ 208, citing *Foster v. California,* 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). "However, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the

time of the crime." *State v. Davis*, 76 Ohio St.3d 107, 112, 666 N.E.2d 1099 (1996); *Coleman v. Alabama,* 399 U.S. 1, 5–6, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

{¶ 30} Upon review, we conclude that Deputy Thornton's in-court identification of Black did not stem from an impermissibly suggestive confrontation procedure, but was instead the result of his observations of Black driving the Suburban at the time the crimes were committed. Therefore, it would have been a futile act for Black's trial counsel to file a motion to suppress Deputy Thornton's identification testimony, as the motion would have surely failed. Accordingly, Black's trial counsel's failure to file a motion to suppress does not rise to the level of ineffective assistance.

{¶ 31} Black's second assignment of error is overruled.

{¶ 32} Both of Black's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Matthew O. Kortjohn
Kiriakos G. Kordalis
Hon. Christopher D. Roberts