[Cite as *State v. Sitzes*, 2023-Ohio-3915.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-7 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0437 |
| | : | |
| BOBBY GENE SITZES II | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 27, 2023

. . . . . . . . . . .

ALANA VAN GUNDY, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Bobby Gene Sitzes II appeals from his convictions for rape.   For the following reasons, we affirm.

I.      **Factual and Procedural History**

{¶ 2} On March 27, 2022, Z.C. disclosed to a relative that Sitzes, who was her

stepfather, had sexually abused her for a number of years.   On March 30, 2022, her half-brother, T.I., also disclosed that he had been sexually abused by Sitzes.

{¶ 3} Following an investigation, Sitzes was indicted on 32 counts of rape and one count of gross sexual imposition.   Specifically, he was indicted in counts one through five for rape in violation of R.C. 2907.02(A)(1)(b) (under 13 years old) regarding Z.C.   He was indicted in counts six through 20 for rape of Z.C. in violation of R.C. 2907.02(A)(2) (force or threat of force).   In count 21, Sitzes was indicted for one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) regarding T.I.[1]   He was indicted on counts 22 through 32 for rape of T.I. in violation of R.C. 2907.02(A)(1)(b).   Counts 22 through 26 carried specifications that the victim was under 10 years old.   Finally, in Count 33, he was indicted of one count of rape in violation of R.C. 2907.02(A)(2) in connection with T.I.

{¶ 4} A jury trial was originally scheduled for June 2022, but the trial court granted a motion for a continuance filed by Sitzes, and the trial was rescheduled for October 18, 2022.   On October 13, 2022, Sitzes filed a pro se handwritten document with the court in which he asked the court to dismiss his trial counsel and appoint an attorney who specialized only in criminal cases and who "does not carry a caseload."   A hearing on the motion for new counsel was conducted October 17, 2022.   Following the hearing, the trial court denied the motion.

{¶ 5} A jury trial was conducted over the course of three days.   Z.C. was a month shy of her sixteenth birthday at the time of the trial.   She testified that Sitzes first abused her when she was 12 years old.   At the time, her family resided at a home on East Cecil

---

[1] The indictment incorrectly cited the gross sexual imposition statute as R.C. 2907.07(A)(4).   However, as noted below, the State dismissed this charge.

Street. She testified she was putting her baby sister to bed when Sitzes grabbed her and penetrated her vaginally with his penis. Z.C. testified that she remembered repeatedly thinking "I'm just 12" during the encounter. The last encounter occurred approximately one week before Z.C. disclosed the abuse. That time, Z.C. had taken a shower and was picking up clothing to put on when she noticed Sitzes in the room. Sitzes then inserted his penis into her vagina, then her mouth, and finally he inserted his fingers into her vagina. Z.C. also recounted encounters with Sitzes that occurred in his hobby room on both a futon and a chair. She testified that sexual encounters also occurred on the living room couch, the floor, and in the home's stairwell. According to Z.C., Sitzes also engaged in sexual activity with her at various times in the kitchen by the sink, the dishwasher, and in the corner. She testified that she was almost 13 when he first began to use a vibrator to penetrate her vagina. She also testified that he would penetrate her mouth and vagina with his penis and fingers when the two were in her bedroom. She testified the abuse in the bedroom occurred frequently. Z.C. testified that Sitzes would occasionally use a condom when he engaged in intercourse with her. Afterward, he would dispose of the used condoms in empty Tim Hortons coffee cups or soda cans. Z.C. also testified that Sitzes sent her several communications via Facebook which were sexually suggestive. The images contained in the communications, obtained through a search warrant, were introduced into evidence as State's Exhibit 17.

{¶ 6} T.I. was 14 years old when he testified at trial. He testified that Sitzes began abusing him when the family still lived in a home on Woodward Avenue[2]; the first sexual

---

[2] The family lived on Woodward Avenue until August 2015, when they moved to the home on East Cecil Street.

encounter occurred in the living room when Sitzes placed his penis in T.I.'s mouth. T.I. testified that the abuse continued in that home and included oral and anal sex. He testified that Sitzes would place T.I.'s penis in Sitzes's anus. According to T.I., Sitzes would "jump on it." T.I. testified that the abuse continued after the family moved to East Cecil Street and occurred in his bedroom and in Sitzes's bedroom. T.I. testified that Sitzes would always "whisper" or "mumble" during the encounters, and that he sounded like he was mad at T.I. According to T.I., Sitzes later began to hit him after the sexual conduct was completed. T.I. also testified that Sitzes would hit him if he tried to refuse Sitzes's advances. T.I. testified that the last encounter with Sitzes occurred a few days prior to Z.C.'s disclosure. At that time, T.I. avoided Sitzes's advances by hitting Sitzes's penis and running downstairs to his mother.

{¶ 7} The State introduced recorded audio of three phone calls made by Sitzes while he was in jail awaiting trial. The State also introduced a video recording of Sitzes's police interview. The content of these recordings will be discussed during our analysis of Sitzes's assignments of error.

{¶ 8} At the end of the State's case, the prosecution dismissed counts 19, 21 and 24. The jury convicted Sitzes of the remaining 30 charges. Following a sentencing hearing, Sitzes was sentenced to an aggregate term of life in prison without the possibility of parole. He was also designated a Tier 3 Sex Offender.

{¶ 9} Sitzes appeals.

## II.    Ineffective Assistance of Counsel

{¶ 10} Sitzes first assignment of error states:

COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION TO SUPPRESS AND FAILING TO REQUEST A COMPETENCY EVALUATION.

{¶ 11} Sitzes asserts his convictions should be reversed because he was denied the effective assistance of counsel at trial.

{¶ 12} This court reviews alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). As stated in those cases, an ineffective assistance claim requires the defendant to show that his trial counsel rendered deficient performance which resulted in prejudice. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 13} To establish deficient performance, Sitzes must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29, citing *Strickland*.

{¶ 14} To establish prejudice, Sitzes must show there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." (Citations omitted.) *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley* at 142, quoting *Strickland* at 694.

{¶ 15} Sitzes first asserts that his trial counsel provided ineffective assistance by failing to file a motion to suppress admissions made during his interview with Detective Miller.

{¶ 16} A suspect's right to the warnings set forth *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), stems from the "Fifth Amendment's prohibition against compelled self-incrimination." *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 16 (2d Dist.), citing *Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). A suspect may waive his *Miranda* rights if the waiver is made voluntarily, knowingly, and intelligently. *State v. Dailey*, 53 Ohio St.3d 88, 91, 559 N.E.2d 459 (1990), citing *Miranda* at 444. A waiver is valid when it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and when the suspect possesses "a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon [them]." *Moran* at 421; *State v. Marejka*, 2d Dist. Montgomery No. 27662, 2018-Ohio-2570, ¶ 14.

{¶ 17} The question of whether a waiver is knowing, intelligent and voluntary is determined upon the totality of the facts and circumstances surrounding the interrogation. *State v. Dotson*, 2d Dist. Clark No. 1997-CA-71, 1997 WL 822694, *7 (Nov. 21, 1997),

citing *Moran*. In considering the totality of the facts and circumstances, we look at "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id.* "A written waiver, made after advisement of *Miranda* warnings but before questioning begins, is strong evidence the accused voluntarily waived those rights. *State v. Penix*, 2d Dist. Clark No. 1835, 1986 WL 9094, *16 (Aug. 18, 1986).

{¶ 18} There is no question that Sitzes was properly advised of his *Miranda* rights and that he acknowledged he understood those rights. Indeed, when Miller first mentioned reading Sitzes his *Miranda* rights, Sitzes responded, "*Miranda* rights, as in I'm being arrested?" Miller then indicated that he was informing Sitzes of his rights because he was not free to leave. Miller spoke plainly and at a normal pace when explaining Sitzes's rights. Sitzes indicated he knew how to read and write and that he understood the rights as explained by Miller. Sitzes indicated he was willing to waive his rights, at which time he signed the waiver form.

{¶ 19} The recording of the interview does not contain any hint of coercion or intimidation. The interview lasted less than two hours, including breaks. Sitzes was seated at a table, was not handcuffed, and was provided water and offered food. Indeed, Sitzes makes no claim that he was physically deprived, mistreated, threatened, or that Miller otherwise induced him to waive his rights.

{¶ 20} However, Sitzes claims that at the time of the interview, he was under the influence of drugs and suffering from "mania" for which he had not taken his medication.

Thus, he contends he was not competent to waive his rights. Sitzes contends that the record shows Miller was aware of his drug use and mental illness at the time of the interview, and that Miller even made multiple statements that Sitzes's behavior during the interview was consistent with the behavior of a person under the influence of drugs. He further claims his mental illness and drug use were apparent because he would often pause and just stare at Miller during the interview.

{¶ 21} Evidence of intoxication and/or mental illness is not dispositive of whether a suspect has made a valid waiver, but rather is part of the consideration of the totality of circumstances. *See State v. Monticue*, 2d Dist. Miami No. 2006-CA-33, 2007-Ohio-4615, ¶ 12, citing *State v. Stewart*, 75 Ohio App.3d 141, 147, 598 N.E.2d 1275 (11th Dist.1991) (intoxication will not render a defendant's waiver of his *Miranda* rights invalid unless his ability to reason is sufficiently impaired); *State v. Hill*, 64 Ohio St.3d 313, 318, 595 N.E.2d 884 (1992) (a suspect's diminished mental aptitude "did not undercut the voluntariness of his statements or his waiver of his *Miranda* rights").

{¶ 22} We cannot find any evidence in this record to support Sitzes's claims that he was intoxicated or suffering from mental illness. The recorded interview does not contain any hint that Sitzes was confused, suffering from any mental defect, or under the influence of any substance. He was able to quickly, and without any hesitation, provide his personal information at the beginning of the encounter. He did not slur his words, and his eyes, which were clearly observable, were not red. Sitzes was congenial and engaged appropriately with Miller. From the outset of the interview, Sitzes was insightful enough to lay the foundation for a possible defense by asserting that Z.C. was a troubled

child due to having been bullied at school and being abandoned by her biological father, suggesting that her accusations against him were the result of those problems.

{¶ 23} Further, despite Sitzes's assertions, Miller did not, at any point during the interview, indicate that Sitzes appeared intoxicated or impaired. Nor does the record support Sitzes's claim that Miller was aware of his alleged intoxication or mental illness. Additionally, we note that the pauses to which Sitzes refers did not occur until well into the interview after Miller informed him of the specificity of the allegations made by Z.C. and the fact that T.I. had also made very specific allegations against him. It appears these pauses occurred at points when Sitzes's responses could incriminate him. At these junctures, Sitzes was careful to redirect his statements to his claim that Z.C. was a troubled child who had simply been acting out when she made the allegations.

{¶ 24} Trial counsel's failure to file a motion to suppress does not necessarily constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). The Sixth Amendment right to effective assistance of counsel does not require trial counsel to file a meritless motion to suppress evidence where none of the defendant's constitutional rights were violated. *State v. Lester*, 126 Ohio App.3d 1, 6, 709 N.E.2d 853 (12th Dist.1998); *State v. Robinson*, 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3d Dist.1996). "It is only considered ineffective assistance of counsel when the record demonstrates the motion to suppress would have been successful if made." *State v. Black*, 2d Dist. Montgomery No. 26986, 2016-Ohio-7901, ¶ 26, citing *State v. Resendiz*, 12th Dist. Preble No. CA2009-04-012, 2009-Ohio-6177, ¶ 29, citing *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11.

{¶ 25} Nothing in this record, including the video recording, suggests that Sitzes lacked an understanding of his *Miranda* rights or the capacity to waive them. Nor does the record suggest that his *Miranda* waiver was anything other than a free and deliberate choice made without intimidation, coercion, or deception. Thus, we conclude a motion to suppress the admissions made during the interview would have been futile, and that trial counsel, therefore, was not ineffective for failing to file a motion to suppress.

{¶ 26} Sitzes also claims counsel was ineffective for failing to file a motion for a competency evaluation. However, on this record, Sitzes cannot establish he was prejudiced by his attorney's failure to obtain such an evaluation. As stated, the interview did not support a claim of incompetency and there is no other evidence in the record to support his claim of incompetency. Upon this record, there is no basis to conclude that trial counsel was ineffective for not requesting that appellant undergo a competency evaluation.

{¶ 27} Because we find no support in the record for Sitzes's claim that he was denied the effective assistance of counsel, the first assignment of error is overruled.


### III.    Decision Not to Provide Sitzes New Counsel

{¶ 28} The second assignment of error asserted by Sitzes states:

THE COURT ERRED BY NOT PROVIDING MR. SITZES WITH A NEW,

AND EFFECTIVE, ATTORNEY.

{¶ 29} Sitzes contends the trial court should have appointed new counsel to represent him. His argument is mostly based upon the allegations of ineffectiveness set

forth in the first assignment of error.   However, he also states that there was a breakdown in communication between his attorney and him.

{¶ 30} The Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution provide criminal defendants with the right to counsel. *State v. Milligan*, 40 Ohio St.3d 341, 533 N.E.2d 724 (1988), paragraph one of the syllabus.   A criminal defendant does not, however, have the right to counsel with whom he or she has a rapport or with whom he or she can develop a meaningful relationship. *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997). "Under the federal and state constitutions, the defendant is simply entitled to the effective assistance of legal counsel." *State v. Hudson*, 8th Dist. Cuyahoga No. 98967, 2013-Ohio-1992, ¶ 7.

{¶ 31} As stated above, trial counsel was not deficient for failing to pursue either a motion to suppress or a competency evaluation.   Thus, to the extent Sitzes's argument in support of this assignment of error relies upon these claims, we find it without merit.

{¶ 32} Regarding the claim that there was a lack of communication between Sitzes and trial counsel, Sitzes's hand-written motion indicates that he believed communication had broken down between counsel and him because counsel misled him and because counsel did not want to call character witnesses on behalf of Sitzes.

{¶ 33} "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel."   *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus.

{¶ 34} The record does not support Sitzes's allegation that counsel misled him in

any way. Further, the mere fact that counsel did not agree with Sitzes's desire to call a character witness did not render his representation ineffective. Counsel had a trial strategy and presented a theory of the case that included establishing a motive for the children to fabricate their allegations. Counsel further consistently faulted the State for failing to present any physical evidence, including DNA evidence, to support its case. Counsel also presented the testimony of Sitzes's mother and cousin.

**{¶ 35}** Based upon the foregoing, we cannot conclude the trial court erred by failing to dismiss trial counsel and appoint new counsel. Accordingly, the second assignment of error is overruled.

## IV.    Manifest Weight of the Evidence

**{¶ 36}** Sitzes's third assignment of error states:

APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF

THE EVIDENCE.

**{¶ 37}** Sitzes asserts that his convictions were not supported by the manifest weight of the evidence. In support, he argues that the State did not present any medical testimony, physical evidence, or DNA evidence to support its case. He also asserts that, because one of the children (not named in the brief or the record) had previously made accusations of sexual assault, his/her testimony was not credible. Additionally, Sitzes notes that, during cross-examination, T.I. agreed that his allegations against Sitzes bolstered Z.C.'s allegations.

**{¶ 38}** When an appellate court reviews whether a conviction is against the

manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except "in the exceptional case in which the evidence weighs heavily against the conviction." (Emphasis added.) *Id.*

**{¶ 39}** Further, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *5 (Aug. 22, 1997). Thus, this court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way. *State v. Bradley*, 2d Dist. Champaign No. 1997-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997), citing *Thompkins* and *Martin*.

**{¶ 40}** We first note that the issue of whether either child had made prior allegations of sexual abuse is not part of the appellate record. Thus, it cannot be a factor

in whether the convictions were against the manifest weight of the evidence. We also note that the State was not required to present any medical, physical, or DNA evidence to corroborate the testimony provided by the children. *See State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 53 (corroboration of victim testimony in rape cases is not required.). Thus, we find no merit in the claim that the absence of such evidence rendered the convictions against the manifest weight of the evidence.

**{¶ 41}** Next, Sitzes questions T.I.'s credibility because he did not make his allegations until he became aware that Z.C. had accused Sitzes of sexually assaulting her. In support, he claims that T.I. "agreed with the statement [by defense counsel] that [his] disclosure would add credence to [Z.C.'s] disclosure, thus, calling into question the motive of both Children." According to the record, defense counsel asked T.I. whether he "[felt] like [he] could help if [he] made similar accusations?" T.I. responded, "If I made similar accusations, I feel like we would be heard because two, two people actually raised up." Tr. p. 223. Sitzes appears to argue that by making this statement, T.I. essentially admitted he fabricated allegations against Sitzes solely to bolster his sister's claims. Indeed, defense counsel made this suggestion during closing argument.

**{¶ 42}** The jury could have accepted Sitzes's argument regarding T.I.'s statements. However, in reviewing T.I.'s entire testimony, he indicated that he was frightened of Sitzes. T.I. further testified that Sitzes would frequently get angry with him and then hit him and make him stand in a corner for hours. He testified he had been "dealing [with] it for around seven years of [his] life" and had been "afraid to say anything." Tr. p. 204. T.I. also testified that he did not immediately reveal his abuse after Z.C. made

her disclosures because his mother was an "emotional wreck" over those allegations, and he did not want to further upset her. However, he testified that he ultimately disclosed the abuse because he thought eventually the authorities would discover it during their investigation. As the trier of fact, the jury was in the best position to determine T.I.'s credibility and, based upon the entirety of his testimony, we cannot find that the jury lost its way in finding T.I. credible.

{¶ 43} Both children testified regarding multiple sexual encounters with Sitzes. They were specific as to the home in which the incidents of abuse had occurred and the specific locations within the home. Moreover, during his first recorded jail phone conversation with his mother, Sitzes admitted he had had one sexual encounter with Z.C., but he stated that she had initiated the contact. He further insisted several times that he had not forced or threatened Z.C. During a second recorded call with his mother, Sitzes blamed the children, stating that "they came to me" and that they had "put [him] in a weird position over and over again." In a subsequent conversation with his wife, Sitzes continued to blame Z.C. for initiating inappropriate contact with him. He also stated that he had known the conduct was "not okay" but that Z.C. had continually "pushed" him and he felt trapped.

{¶ 44} During the police interview, Sitzes made admissions regarding one sexual encounter with each child. The first occurred when Miller stated to Sitzes that Z.C. had indicated that Sitzes disposed of the condoms he used in empty Tim Hortons coffee cups; Miller then stated that the police had found a cup in the trash and that it was going to be sent for DNA testing. At that point, Sitzes stated, "there was one time about a year ago,

I woke up with [Z.C.'s] mouth on my sh*t."   Sitzes stated he pushed himself away from Z.C., who then said she just wanted "to have fun."

{¶ 45} Later in the interview, after Miller informed Sitzes that T.I. had discussed oral sex with the authorities, Sitzes stated, "it happened once with [T.I.] too."   Sitzes claimed the incident had occurred about seven months prior to the interview.   As explained by Sitzes, he was asleep in his bedroom when he was awakened by T.I. touching him.   Sitzes claimed that T.I. had performed oral sex on him and that it lasted approximately 30 minutes.   Sitzes stated that when the encounter was over, T.I. "got up and walked out of my room."   Sitzes denied initiating either encounter.

{¶ 46} From our review of the record, we cannot conclude the jury lost its way in finding Sitzes guilty of the 30 counts of rape, as there was competent, credible evidence provided by both children which was strongly corroborated by Sitzes admissions.

{¶ 47} The third assignment of error is overruled.

## V.    Conclusion

{¶ 48} All of Sitzes's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


WELBAUM, P.J. and LEWIS, J., concur.